# United States Court of Appeals
## For the First Circuit

Nos. 16-2289, 16-2319, 16-2368

RICHARD DIMOTT; WAYNE N. COLLAMORE; CHARLES H. CASEY, JR.;

Petitioners, Appellants,

v.

UNITED STATES,

Respondent, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge,
Hon. D. Brock Hornby, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Lynch, Circuit Judges.

David Beneman, Federal Public Defender, for appellants.
Julia M. Lipez, Assistant United States Attorney, with whom
Richard W. Murphy, Acting United States Attorney, was on brief,
for appellee.

February 2, 2018

**LYNCH**, **Circuit Judge**.  This consolidated appeal arises from the denials of three federal post-conviction relief petitions filed under 28 U.S.C. § 2255.  Richard Dimott, Wayne N. Collamore, and Charles H. Casey, Jr., each pled guilty to a federal firearm offense and had a history of Maine state burglary convictions.  On collateral review, all three allege that they no longer qualify for a sentence enhancement under the Armed Career Criminal Act ("ACCA") because the ACCA's residual clause was invalidated by Johnson v. United States, 135 S. Ct. 2251 (2015) ("Johnson II").

Each petitioner filed his federal habeas petition outside of the one-year statute of limitations under 28 U.S.C. § 2255(f)(1).  All three nevertheless contend on appeal that their petitions are timely under 28 U.S.C. § 2255(f)(3) because Johnson II, which is retroactively applicable, is the source of their claims.  Specifically, Dimott, Collamore, and Casey argue that they were sentenced pursuant to the ACCA's (now-void) residual clause, so their sentences must be vacated, and they cannot be resentenced under the ACCA's enumerated clause in light of Mathis v. United States, 136 S. Ct. 2243 (2016),[1] a case that is not retroactively applicable.

The district courts in all three cases dismissed the petitions on procedural grounds.  We affirm the dismissals.  All

_____

[1]     More specifically, the petitioners argue that Mathis requires that we overrule this court's holding in United States v.

- 2 -

three petitions are untimely because they raise Mathis, not Johnson II claims, and Mathis does not reset the one-year statute of limitations under § 2255(f)(3).  The petitioners have no Johnson II claims because they have not shown that their original ACCA sentences were based solely on the residual clause.

I.

We first determine, as to each petitioner, whether the district court sentenced him pursuant to the enumerated or (the separate) residual clause of the ACCA.  Accordingly, we give the relevant procedural history of each case.

A.   Dimott

Richard Dimott pled guilty to one count of being a felon in possession of a firearm on March 30, 2007, in violation of 18 U.S.C. §§ 922(g)(1) and 942(e).  Based on his eight previous state convictions in Maine for burglary, see Me. Rev. Stat. Ann. tit. 17-A, § 401, the district court concluded that Dimott qualified for the sentencing enhancement under the ACCA, but did not specify under which clause -- enumerated or residual -- it was sentencing him.  On September 6, 2007, the district judge sentenced Dimott to 150 months of imprisonment and five years of supervised release. Dimott did not appeal his sentence.

_____

Duquette, 778 F.3d 314, 317 (1st Cir. 2015), that a Maine burglary conviction is a violent felony under the enumerated clause, 18 U.S.C. § 924(e).

- 3 -

About nine years after his conviction, Dimott filed a motion to correct his sentence under 28 U.S.C. § 2255 on June 27, 2016. This was within one year of the Supreme Court's decision in Johnson II. Dimott argued that his convictions for Maine burglary cannot be the basis for his ACCA sentence because the Supreme Court's 2016 decision in Mathis made clear that Maine burglary is nongeneric and thus did not fall under the enumerated clause, and Johnson II invalidated sentences that were based on the ACCA's residual clause.

The district court denied Dimott's habeas petition for being untimely. The same judge who had sentenced Dimott earlier under the ACCA, rejected the petition:

> Johnson II is understood to be one such decision newly recognizing a right that is retroactively applicable . . . . However, Dimott was deemed eligible for an ACCA sentence based only on burglary convictions, which qualify under ACCA's "enumerated clause." . . . Dimott's reliance on Mathis is also misplaced. In contrast to Johnson II, Mathis has not been recognized as a case that announced a new substantive rule that is retroactively applicable to cases on collateral review.

Dimott v. United States, Nos. 2:06-cr-26, 2:16-cv-347, 2016 WL 6068114, at *2-3 (D. Me. Oct. 14, 2016) (emphasis added). The district court issued Dimott a certificate of appealability, and he filed this appeal on October 21, 2016.

- 4 -

B.   Collamore

Wayne N. Collamore pled guilty on December 21, 2010, to one count of escape from the custody of the United States Bureau of Prisons, in violation of 18 U.S.C. § 751(a), and one count of being a felon in possession of a firearm.  Based on, inter alia, his five previous state convictions for Maine burglary, the district court found Collamore to be an armed career criminal, again without specifying under which clause of the ACCA.  On March 23, 2011, the sentencing judge imposed five years of imprisonment for the escape count, and a concurrent 210 months of imprisonment -- based on the ACCA enhancement -- for the firearm count. Collamore did not appeal his sentence.

More than five years after his conviction and sentencing, Collamore filed a § 2255 motion on May 19, 2016, arguing that his ACCA predicates were invalid post-Mathis.  The reviewing judge, who was also Collamore's sentencing judge, denied Collamore's habeas petition for being untimely.  That judge specifically cited the Dimott decision to explain the dismissal:

> This Court has recently had occasion to consider whether Mathis triggered a new one-year period for habeas relief under 28 U.S.C. § 2553(f)(3).  In Dimott, this Court concluded that it did not.  This Court also concluded that Johnson II does not provide a basis to challenge the status of convictions that were deemed to fall within ACCA's enumerated clause, as opposed to the now-invalidated residual clause.

- 5 -

Collamore v. United States, Nos. 2:16-cv-259, 2:10-cr-158, 2016 WL 6304668, at *2 (D. Me. Oct. 27, 2016) (internal citations omitted). The district court issued a certificate of appealability, and this appeal was docketed on October 31, 2016.

C.   Casey

Charles H. Casey, Jr., pled guilty to being a felon in possession of a firearm on April 27, 2012. The district court found that Casey qualified for an ACCA sentencing enhancement based on, inter alia, his three prior convictions in Maine for burglary, without specifying which ACCA clause was involved, and sentenced Casey to 180 months of imprisonment. Casey did not appeal his sentence.

Nearly four years after his conviction and sentencing, Casey filed a § 2255 motion on June 27, 2016, collaterally attacking his sentence. The same judge who had sentenced Casey, heard the petition. Casey argued that his Maine burglary convictions did not constitute predicate offenses under the ACCA. The Government responded that Casey's petition was barred because his Johnson II claim was procedurally defaulted. The district court agreed with the Government and found that Casey failed to demonstrate that his procedural default would unfairly prejudice him "[b]ecause extant First Circuit caselaw holds that Casey's prior Maine burglary convictions remain qualifying enumerated

- 6 -

violent felonies even after Johnson's invalidation of the residual clause."

Although the Government did not raise -- and the district court did not address -- either the timeliness issue or the merits of whether the Maine burglary statute was generic, the certificate of appealability, requested by Casey, touched indirectly on both:

> Casey's petition raises the following issues: (1) whether the retroactive application of Johnson allows any petitioner serving an ACCA sentence to have his qualifying "violent felony" convictions re-examined even if those convictions appear to fall under the ACCA's enumerated clause; and (2) if so, whether Mathis has effectively overruled the First Circuit's decision . . . that a Maine burglary conviction . . . qualifies as a violent felony under ACCA's enumerated clause.

Casey timely filed this appeal.

## II.

Dimott, Collamore, and Casey argue on appeal that the district courts erred in denying their petitions because they were sentenced pursuant to the ACCA's (now-void) residual clause. We review de novo the district courts' denials of their habeas petitions on procedural grounds. See Wood v. Spencer, 487 F.3d 1, 3 (1st Cir. 2007) (citing Rodriguez v. Spencer, 412 F.3d 29, 32 (1st Cir. 2005)). Because we find all three petitions time-barred, we do not reach the merits of the petitioners' argument that their predicate offenses no longer qualify under the ACCA

- 7 -

because Johnson II voids the residual clause and Mathis renders Maine burglary a nongeneric offense that does not qualify under the enumerated clause.

Congress enacted the Antiterrorism and Effective Death Penalty Act (AEDPA) "in part to combat increasingly pervasive abuses of the federal courts' habeas jurisdiction." Delaney v. Matesanz, 264 F.3d 7, 10 (1st Cir. 2001) (citing Felker v. Turpin, 518 U.S. 651, 664 (1996)). The statute imposes a one-year statute of limitations on federal prisoners for filing habeas petitions, which runs from the latest of "(1) the date on which the judgment of conviction bec[ame] final; . . . [or] (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f).

More than one year had passed between the time each petitioner's conviction became final and the date on which each petitioner filed his § 2255 motion. As such, for their petitions to be timely, Dimott, Collamore, and Casey must demonstrate that (1) their claims arise from a right that "has been newly recognized by the Supreme Court and made retroactively applicable," and that (2) they filed within one year of the Supreme Court's decision recognizing that right. Id. Each petitioner argues that Johnson II -- which the Supreme Court held is retroactively applicable on

- 8 -

collateral review, see Welch v. United States, 136 S. Ct. 1257, 1268 (2016) -- is the basis of his claim, and that his petition is timely.  We disagree and find all three petitions untimely because they raise Mathis, not Johnson II, challenges, and, in any event, the petitioners have no Johnson II claims.  We first address the petitions of Dimott and Collamore, before turning to Casey.

A.    Dimott and Collamore

We find it plain that Dimott's and Collamore's petitions do not raise Johnson II challenges because the record reflects that they were sentenced under the ACCA's enumerated clause, not the residual clause.  As such, we need not delve into the merits because their petitions, at most, raise untimely Mathis claims.

On collateral review, the district court judge in both cases (who had also served as the sentencing judge) found that Dimott and Collamore had earlier been sentenced pursuant to the ACCA's enumerated clause.  See Collamore, 2016 WL 6304668, at *2 ("Johnson II does not provide a basis to challenge the status of [Collamore's] convictions that were deemed to fall within ACCA's enumerated clause, as opposed to the now-invalidated residual clause."); Dimott, 2016 WL 6068114, at *2 ("Dimott was deemed eligible for an ACCA sentence based only on burglary convictions, which qualify under ACCA's 'enumerated clause.'").

Although these findings were made during the collateral review process, and not expressly stated at the time of sentencing,

- 9 -

we give them due weight because the habeas judge was describing his own decisions at sentencing. Cf. United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978) (holding that "if the [post-conviction relief] claim is based upon facts with which the trial court, through review of the record or observation at trial, is familiar, the court may make findings without an additional hearing"); see also United States v. Snyder, 871 F.3d 1122, 1128 (10th Cir. 2017) (giving due weight to the district court's determination that "as a matter of historical fact, . . . it did not apply the ACCA's residual clause in sentencing [the defendant] under ACCA"); Feldman v. Perrill, 902 F.2d 1445, 1447 (9th Cir. 1990) (crediting the district court's determination that "he had not relied on the 1976 conviction, only the underlying conduct," when the petitioner "initiated an attack on his federal sentence, arguing that it had been improperly enhanced due to the sentencing judge's reliance on an allegedly invalid state conviction"). Here, too, there is no gap in information about what happened. And the petitioners do not contend that the district court was incorrect in its characterization.

Because they were sentenced pursuant to the ACCA's enumerated clause, Dimott and Collamore are, at most, asserting a claim about Mathis. In fact, the linchpin of both petitioners' argument is that Mathis dictates that Maine burglary is a nongeneric offense, so it cannot qualify as an ACCA predicate.

- 10 -

The Supreme Court has indicated, though, that Mathis did not announce a new, retroactively applicable rule. See 136 S. Ct. at 2257 (noting that the case was a "straightforward" application of more than "25 years" of precedent). Thus, the precondition for the timeliness requirement under § 2255(f)(3) is not met. Cf. Stanley v. United States, 827 F.3d 562, 565 (7th Cir. 2016) ("Johnson does not have anything to do with the . . . elements clause of . . . the Armed Career Criminal Act, and § 2255(f)(3) therefore does not afford prisoners a new one-year period to seek collateral relief on a theory that the elements clause does not apply to a particular conviction.").

To circumvent the statute of limitations, Dimott and Collamore try to pass off their Mathis claims under the guise of Johnson II claims, but their argument is foiled by a logical misstep. In order to even arguably invoke Johnson II, they must first succeed in arguing -- on the merits -- that their ACCA enhancement relies on the residual clause because Mathis renders Maine burglary a nongeneric offense. That is the essence of a Mathis challenge. To hold otherwise would create an end run around AEDPA's statute of limitations. It would allow petitioners to clear the timeliness bar by bootstrapping their Mathis claims onto Johnson II claims, even where, as here, the merits of their case entirely depend on whether their previous convictions still qualify as ACCA predicates in light of Mathis. This cannot be

right.  The district court correctly concluded that Dimott's and Collamore's petitions depended on Mathis, and were thus untimely.

B.  Casey

The remaining petitioner, Casey, presents a somewhat different case because (1) the Government failed to assert the timeliness defense before the district court, and (2) the record is silent as to which ACCA clause -- enumerated or residual -- the district court earlier relied on.  Regardless, Casey's petition is time-barred for the same reason as the other two petitions: it raises a Mathis, not a Johnson II, challenge.

1.  Forfeiture

The Government failed to argue before the district court that Casey's petition was untimely, relying instead on another procedural bar: that Casey had defaulted his Johnson II claim.  On appeal, Casey attempts to use the Government's omission as a shield against AEDPA's strict statute of limitations and argues that the government may no longer raise the timeliness issue on appeal.

We disagree that the Government's inadvertence is fatal to applying the timeliness bar here.  The Supreme Court has repeatedly recognized the power of federal courts to raise sua sponte the timeliness of habeas petitions.  See Wood v. Milyard,

566 U.S. 463, 473 (2012) (courts of appeals); Day v. McDonough, 547 U.S. 198, 209 (2006) (district courts).[2]

The dissent asserts that appellate courts may excuse the Government's waiver only if the Government proves that the case is "exceptional." But that is a misreading of Wood.[3] There, the Supreme Court reaffirmed the general principle that "court[s] may consider a statute of limitations or other threshold bar the State failed to raise in answering a habeas petition," 566 U.S. at 466 (citations omitted), and only cautioned against doing so if "the State, after expressing its clear and accurate understanding of the timeliness issue, deliberately steer[s] the District Court away from the question and towards the merits," id. at 474 (citations omitted). The Court narrowly held in Wood that it was

---

[2]    Both Day and Wood concerned federal habeas petitions brought by state prisoners under 28 U.S.C. § 2254, not by federal prisoners under § 2255. We see no reason, however, why this Court's power to raise sua sponte the timeliness defense for § 2254 cases should not extend to § 2255 cases. The statute of limitations provisions of both statutes mirror one another, and the considerations flagged by the Supreme Court in Day -- "judicial efficiency," "conservation of judicial resources," and "finality," 547 U.S. at 205-06 (quoting Acosta v. Artuz, 221 F.3d 117, 123 (2d Cir. 2000)) -- apply equally in the context of federal prisoners seeking post-conviction relief.

[3]    In any case, the Supreme Court found in Day, the predecessor to Wood, that inadvertent error can constitute an "extraordinary circumstance[]" that justifies raising the timeliness bar sua sponte. See Wood, 566 U.S. at 471 (citing Day, 547 U.S. at 201, 203). In Day, the Government erroneously informed the district court the petition was timely, due to a miscalculation. Id.

an abuse of discretion to raise timeliness sua sponte in that case because "the State twice informed the U.S. District Court that it 'would not challenge, but [is] not conceding, the timeliness of Wood's habeas petition,'" id. at 465, thereby evincing clear gamesmanship.

That is not the situation here. Assuming arguendo that similar concerns govern federal petitioner § 2255 cases as state petitioner § 2254 cases, the Government did not "strategically withh[o]ld the [limitations] defense or cho[o]se to relinquish it" in order to reach the merits of Casey's petition. Id. at 472 (alteration in original) (quoting Day, 547 U.S. at 210-11). Rather, the Government argued procedural default (another procedural bar) but made no mention of the defense of untimeliness at that point. The dissent makes much ado about the fact that the same U.S. Attorney's Office raised the timeliness bar in opposition to Dimott's and Collamore's petitions. But the Government's inconsistency, if anything, demonstrates inadvertence, not stratagem -- it simply had nothing to gain by only raising one procedural bar instead of two.

Moreover, unlike in Wood, the certificate of appealability arguably raised the timeliness issue, and the Government did brief it on appeal and argue that it did not waive the timeliness bar. In fact, the crux of the Government's position is that petitioners cannot reset the one-year statute of

- 14 -

limitations using § 2255(f)(3) because they fail to raise Johnson II claims.  As such, we would not be rewarding the Government for any gamesmanship before the district court if we were to bypass its failure to raise the untimeliness defense at the outset before the district judge.

There is also no issue of procedural fairness.  Casey, the losing party in district court on other grounds, had ample notice of the timeliness defense -- beginning with the issues raised in the certificate of appealability -- and the opportunity to actually respond, both as to briefing and during oral argument before this court, which he has done.  We would, by reaching the timeliness issue, further "[t]he considerations of comity, finality, and the expeditious handling of habeas proceedings" that are at the very core of AEDPA.  Day, 547 U.S. at 208.  Accordingly, the balance of relevant factors favors the ability of the Government to assert the timeliness defense now.[4]

Indeed, contrary to the dissent's assertion that this court "religiously" holds waiver against the Government, we -- along with other courts of appeals -- have upheld the discretion of federal courts to deny habeas petitions on procedural grounds in analogous contexts.[5]  See Oakes v. United States, 400 F.3d 92,

---

[4]     We do not rule on the correctness of the district court's holding that Casey's Johnson II claim was procedurally defaulted.

[5]     And this case is clearly distinguishable from cases in which other courts of appeals have declined to act sua sponte.

97 (1st Cir. 2005) (finding that the district court did not err in excusing the government's failure to raise the procedural default bar); see also Coulter v. Kelley, 871 F.3d 612, 618 (8th Cir. 2017) (finding that the district court did not err in considering timeliness sua sponte when the State "did not knowingly and intelligently waive its statute-of-limitations defense," and was, at most, negligent); In re Williams, 759 F.3d 66, 69 (D.C. Cir. 2014) (finding that the court of appeals could raise, sua sponte, the timeliness bar to deny petitioner's motion for a successive petition for post-conviction relief).

Accordingly, we proceed to consider the timeliness of Casey's petition.

2.    Burden of Proof and Production on Petitioner

Casey contends that his petition is timely.  He urges us to adopt a rule that, when faced with a silent record, we must assume the district court sentenced the defendant pursuant to the residual clause.  Casey does not, however, assert that he was in fact sentenced under the residual clause.

---

See, e.g., United States v. Miller, 868 F.3d 1182, 1186 (10th Cir. 2017) (relying, in part, on the fact that the petitioner "ha[d] been afforded no opportunity to respond to the Government's new timeliness argument"); In re Jackson, 826 F.3d 1343, 1348 (11th Cir. 2016) (emphasizing that "[n]either the Government nor [the petitioner] . . . presented a position about a limitations defense").

In urging this rule, Casey asks us to break with our time-honored precedent. This circuit has long held that federal post-conviction petitioners bear the burden of proof and production under § 2255, and must "establish[] by a preponderance of the evidence that they are entitled to relief." DiCarlo, 575 F.2d at 954. Other circuits agree. See, e.g., Stanley, 827 F.3d at 566 ("As the proponent of collateral review, [the petitioner] had to produce evidence demonstrating entitlement to relief." (citations omitted)); In re Moore, 830 F.3d 1268, 1272 (11th Cir. 2016) (aggregating cases across seven circuits that hold the same).

The Eleventh Circuit has applied this burden of proof specifically to situations where federal petitioners allege that they raise Johnson II claims. See Beeman v. United States, 871 F.3d 1215, 1221 (11th Cir. 2017) ("We conclude and hold, that, like any other § 2255 movant, a Johnson § 2255 claimant must prove his claim."). In Beeman, the court announced a clear rule: "To prove a Johnson II claim, the movant must show that -- more likely than not -- it was the use of the residual clause that led to the sentencing court's enhancement of his sentence." Id. at 1221-22. A mere possibility is insufficient.[6]

---

[6] In re Chance, 831 F.3d 1335 (11th Cir. 2016), an Eleventh Circuit case cited by the petitioners, construed silence in the petitioner's favor. See id. at 1341. However, that case preceded Beeman. And in any event, the opinion itself acknowledged that its proposed rule lacked legal force because it was only dicta. See id. at 1339.

This approach makes sense. Petitioners should bear the burden of proof because they were certainly present at sentencing and knowledgeable about the conditions under which they were sentenced. Furthermore, any other rule would undercut an animating principle of AEDPA: the presumption of finality. And "[w]ithout finality, the criminal law is deprived of much of its deterrent effect." Teague v. Lane, 489 U.S. 288, 309 (1989).

Casey fails to point to any evidence suggesting that he was sentenced under the residual clause.[7] Nevertheless, the dissent repeatedly insists that because the district judge found Casey's Johnson II claim procedurally defaulted, he expressly found that "Casey raised a timely Johnson II claim." This is plainly incorrect. That the district judge could have, but did not, raise timeliness sua sponte, and instead relied on another procedural bar, is not tantamount to finding that Casey was, in fact, sentenced pursuant to the residual clause. This is especially so when procedural default was the only procedural bar the Government raised. To say otherwise would be to hold that the dismissal of a habeas petition on one ground is an express finding that the petition is otherwise valid on every other ground.

_____

[7] Casey did not ask for remand to the district court to prove that he was in fact sentenced solely under the residual clause. He has chosen to proceed on the record as it now exists. See Beeman, 871 F.3d at 1221.

The dissent also argues that because the district court's order expressly stated that "Casey's Johnson claim is a novel constitutional claim that applies retroactively," Casey, 2016 WL 6581178, at *3, it indicated "clear[ly] and unambiguous[ly]" that he was sentenced pursuant to the residual clause. Again, not so. The dissent takes this language out of context. That the district court found Casey had cause for his procedural default -- because Johnson II created a novel, retroactively applicable right -- is not equivalent to finding, on the merits, that Casey raised a valid Johnson claim. Otherwise, any petitioner who clears the procedural default hurdle automatically succeeds on the merits. That cannot be right.

The Eleventh Circuit decision that Casey flags, In re Adams, 825 F.3d 1283 (11th Cir. 2016), lends no support to the contrary. There, the court permitted the petitioner's Johnson II claim despite a silent record because clear Supreme Court and Eleventh Circuit precedent at the time of sentencing held that a conviction under the Florida burglary statute was an ACCA predicate under the residual clause. See id. at 1285. This case presents the opposite fact pattern. Our decision in Duquette held that Maine burglary qualifies as a predicate offense under the ACCA's enumerated clause. See 778 F.3d at 317. Although Duquette was decided in 2016, the opinion describes its holding as a "straightforward" application of the 1990 Supreme Court decision

- 19 -

in Taylor v. United States, 495 U.S. 575 (1990). See 778 F.3d at 317. Other district courts at the time of Casey's sentencing also treated Maine burglary as a generic offense. For instance, Dimott's and Collamore's sentences were found subject to the enumerated clause based on the petitioners' Maine state burglary convictions just a few years before.

Casey directs our attention to three cases, United States v. Geozos, 870 F.3d 890 (9th Cir. 2017); United States v. Winston, 850 F.3d 677 (4th Cir. 2017); and United States v. Taylor, 873 F.3d 476 (5th Cir. 2017), that purportedly espouse his requested approach.

The Ninth Circuit in Geozos held that a state or federal petitioner has a valid Johnson II claim whenever the sentencing court "may have" relied on the residual clause. 870 F.3d at 896. The court said it did so based on an extension of the Stromberg principle, which prescribes that a general verdict is void if it "may have rested" on an unconstitutional ground. Id. (quoting Griffin v. United States, 502 U.S. 46, 53 (1991)). In the Ninth Circuit's view, a post-conviction finding by a judge as to the basis for a petitioner's enhanced sentence should not be treated "any differently than a finding made by a jury for the purpose of conviction." Id.

Our view is different. We think the focus must be on the fact that we are applying clear limits established by Congress

- 20 -

for when federal post-conviction petitions may be entertained by the federal courts, an issue not implicated at all by Stromberg. There are also many reasons why collateral review is unique. "Chief among them is the principle that 'direct appeal is the primary avenue for review of a conviction or sentence . . . . When the process of direct review . . . comes to an end, a presumption of finality and legality attaches to the conviction and sentence.'" In re Moore, 830 F.3d at 1272 (alterations in original) (quoting Barefoot v. Estelle, 463 U.S. 880, 887 (1983)). That presumption is irreparably undermined if the Government is forced to bear the burden of proving that each Johnson II claimant does not have a valid Johnson II claim. The burden should fall on the petitioner to establish by a preponderance of the evidence a necessary element of his Johnson II claim -- that his ACCA sentence rested on the residual clause.

The Fourth Circuit in Winston agreed with the Ninth Circuit as to state habeas claimants, but on different grounds. The Fourth Circuit reasoned that "imposing the burden on movants [to show they had been sentenced under the residual clause]. . . would result in 'selective application' of the new rule of constitutional law announced in Johnson II, violating 'the principle of treating similarly situated defendants the same.'" Winston, 850 F.3d at 682 (quoting In re Chance, 831 F.3d at 1341). We think that does not follow. Requiring habeas petitioners to

establish -- by a preponderance of the evidence -- that they were sentenced pursuant to the residual clause does not lead to treating similarly situated defendants differently.  Precisely the opposite: it is imposing a uniform rule.  That the burden is less friendly to petitioners than the one put forth in Winston does not make it unequal.

Moreover, Winston's reliance on Teague to justify shifting the burden of proof onto the Government is misplaced.  In Teague, the Supreme Court held that "habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure unless those rules would be applied retroactively to all defendants on collateral review."  489 U.S. at 316.  Although the Court noted that "once a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated," id. at 300, it never said that evenhanded justice requires the Government to bear the burden of proving that the petitioner does not have a valid claim for relief.  In fact, shifting the burden would implicate one of the Supreme Court's chief concerns in Teague: that the "costs imposed . . . by retroactive application of new rules of constitutional law on habeas corpus" would "far outweigh the benefits of this application" if "it continually forces the [Government] to marshal resources in order to keep in prison defendants whose trials and appeals conformed to then-

existing constitutional standards." 489 U.S. at 310 (citations omitted).

Finally, the Fifth Circuit's decision in Taylor is clearly distinguishable. In that case, the court held that a federal prisoner had a valid Johnson II claim even though the record was silent, and the district court later declared that the "residual clause 'did not play any role in Movant's sentencing.'" Taylor, 873 F.3d at 481. Although the court described the approaches taken by the Fourth, Ninth, and Tenth Circuits, it did not decide "which, if any, of these standards [it would] adopt." Id. at 481-82. Instead, the court held that "[the petitioner's] claim merit[ed] relief" because "there was precedent suggesting that Taylor's third predicate conviction could have applied only under the residual clause." Id. at 482. No such precedent exists here. Rather, at the time of Casey's sentencing, many district courts did not even consider the residual clause as the basis for defendants' ACCA sentences when faced with predicate offenses under state burglary statues similar to Maine's. See, e.g., United States v. Miller, 478 F.3d 48, 50-52 (1st Cir. 2007) (Connecticut burglary statute); United States v. Bennett, 469 F.3d 46, 49-50 (1st Cir. 2006) (Rhode Island burglary statute); United States v. Mastera, 435 F.3d 56, 60-62 (1st Cir. 2006) (Massachusetts burglary statute).

Our view is different from those taken in Geozos, Winston, and Taylor. Placing the burden of proof and production on habeas petitioners is in accord with our precedent and with the goals of AEDPA. See Turner v. United States, 699 F.3d 578, 587 (1st Cir. 2012) (noting that "AEDPA's purpose is to further finality of convictions" (citing Duncan v. Walker, 533 U.S. 167, 178 (2001))). We hold that to successfully advance a Johnson II claim on collateral review, a habeas petitioner bears the burden of establishing that it is more likely than not that he was sentenced solely pursuant to ACCA's residual clause. Casey has not met that burden. Instead, as noted, he has never argued that he was actually sentenced under the residual clause. Accordingly, we find Casey's petition, which -- like those of Dimott and Collamore -- relies solely on the non-retroactive decision in Mathis, untimely.[8]

### III.

For the foregoing reasons, we affirm the district courts' dismissals of Dimott's, Collamore's, and Casey's § 2255 petitions.

---

[8] Casey also attempts to argue that Mathis is not new law, but merely "clarifies" longstanding law. This is in effect an argument that Duquette was wrongly decided at the outset. That again goes to the merits of his Mathis claim, and does not alter the fact that Mathis does not apply retroactively on collateral review. Cf. 136 S. Ct. at 2257.

**-Dissenting Opinion Follows-**

**TORRUELLA**, <u>Circuit Judge</u> **(Joining in part and Dissenting in part)**. I join the majority in affirming the dismissals of Dimott's and Collamore's § 2255 petitions as untimely. However, I cannot join in the majority's disparate and inconsistent treatment of Casey's petition for habeas relief, as opposed to its treatment of the other two petitions at issue, in order to avoid what this case truly calls for: a re-evaluation of this Court's opinion in <u>Duquette</u> in light of the Supreme Court's decision in <u>Mathis</u>.

In the cases of Dimott and Collamore, the majority correctly gives "due weight" to the habeas judge's finding that the petitioners were sentenced according to the ACCA's enumerated clause because the habeas judge was also the sentencing judge. It is eminently reasonable that a sentencing judge is capable of determining the basis upon which he or she imposed a sentence enhancement when subsequently reviewing that sentence on a § 2255 habeas petition. <u>See</u> <u>Schriro</u> v. <u>Landrigan</u>, 550 U.S. 465, 495–96 (2007) (stating that a judge's memory deserves some deference provided it is based on a complete review of the case). Here, Judge Singal had the opportunity to review Dimott and Collamore's cases prior to determining that he had sentenced them under the enumerated clause. Thus, that determination deserves the deference, as the panel majority recognizes.

- 26 -

The same deference must be given to the habeas judge who reviewed Casey's petition, Judge Hornby, who -- like Judge Singal in Dimott and Collamore's cases -- was the judge that sentenced Casey. On habeas review, Judge Hornby, also facing a silent record as to the clause under which he applied Casey's ACCA sentencing enhancement, found that Casey did raise a Johnson II claim -- meaning that his sentence was enhanced pursuant to the ACCA's residual clause. See Casey, 2016 WL 6581178, at *3. Judge Hornby analyzed the habeas petition accordingly. Id., at *3-5. Yet, the majority inexplicably fails to give Judge Hornby the same deference that it gives to Judge Singal.

The majority incorrectly assumes that my "insist[ence]" that the district court found that Casey raised a timely Johnson II claim is that the court analyzed the Government's procedural-default argument. This is wide of the mark. Rather, I so find after according Judge Hornby's words their clear and unambiguous meaning. See id., at *3 ("I conclude that . . . Casey's Johnson claim is a novel constitutional claim that applies retroactively, and he has therefore shown cause for [failing to argue that the ACCA residual clause was unconstitutional at sentencing or on appeal]."), *4 n.9 ("As I have determined above, Casey's Johnson claim is a novel constitutional claim with retroactive application . . . ."). The majority rationalizes its disregard of this plain language by claiming that I "take [it] out of context." Yet, as

the majority notes, should the district court have believed that Casey had been sentenced pursuant to anything but the ACCA's residual clause, it could have raised timeliness sua sponte. The district court was clearly aware that similar petitions had been decided on timeliness grounds -- it even discussed Dimott in its decision; should it have believed such an argument appropriate, it would not have needed to reach the merits of Casey's Johnson II claim in order to conduct a prejudice analysis. See id. at *5. But, it did not raise the issue, and after finding that Casey was sentenced pursuant to the residual clause, embarked on the more onerous procedural default analysis. "Due regard for the trial court's processes and time investment is . . . a consideration appellate courts should not overlook." Wood, 566 U.S. at 474.

In a further departure from this Court's guiding judicial doctrines, the majority raises sua sponte the issue of the timeliness of Casey's habeas petition, which the Government did not argue below. In doing so, the majority ignores the advice provided by the Supreme Court in Wood that, in situations such as this, "[a]though a court of appeals has discretion to address, sua sponte, the timeliness of a habeas petition, appellate courts should reserve that authority for use in exceptional cases." Id. at 473 (finding that the appellate court abused its discretion in raising the timeliness issue sua sponte); see also Cole v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.,

533 F.3d 932, 936 (8th Cir. 2008) (applying only a "narrow exception" to established preservation rule). The Government makes no argument that this is an exceptional case, and -- especially in light of Judge Hornby's finding that Casey raised a timely Johnson II claim -- this is not the appropriate case for the Court to act on its own accord. Here, as in Wood, where the Government forewent an argument below, we should not exercise our confined discretion to save the Government's waiver.

To justify its divergence from Wood's guidance and find that the Government did not forfeit its timeliness argument, the majority speculates -- in the Government's favor -- as to the reason that the Government did not advance this argument. I cannot subscribe to this guesswork approach. This Court religiously finds a party's failure to raise an argument before the district court as waived on appeal. See, e.g., United States v. Román-Huertas, 848 F.3d 72, 77 (1st Cir. 2017) ("The Government did not raise [petitioner's] untimely objection before the district court, . . . and so it [is] waived . . . ."); Sotirion v. United States, 617 F.3d 27, 32 (1st Cir. 2010) (finding the Government's procedural default argument waived for failing to raise it as a defense in the district court to a § 2255 petition). The same waiver must apply here, and we should refrain from such "unguided speculation." Cf. Halloway v. Arkansas, 435 U.S. 475, 491 (1978) (finding a harmless-error analysis inappropriate in assessing

constitutional error of joint representation); Walsh v. Teltech Systems, Inc., 821 F.3d 155, 160 (1st Cir. 2016) (stating that appellate courts draw all reasonable inferences in favor of the nonmoving party but ignore unsupported speculation when reviewing an award of summary judgment).

Moreover, I have significant qualms with the effect that the majority's reasoning has on the waiver doctrine. The majority credits the Government for "brief[ing] [the timeliness issue] on appeal and argu[ing] that it did not waive the timeliness bar." Yet, this is precisely what the waiver doctrine is intended to prevent. Applying the majority's approach would allow any party that chose not to raise an argument in the district court to simply brief that issue on appeal and argue that it did not waive the issue below. In those circumstances, we would find the argument waived, as we should in this one. Further, the Government only acknowledges its failure to raise the timeliness issue in a footnote in its opening brief to this Court, providing scant explanation as to why the claim was not raised below or why it should not be treated as waived. Instead, it states that the petitioners have briefed the issue and that this Court may raise it sua sponte. Such an undeveloped address is hardly sufficient to save the argument from waiver on appeal. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in

a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Instead, I would find that the Government relinquished its timeliness argument in the district court. I note that this same U.S. Attorney's Office (for the District of Maine) raised the issue of timeliness in its oppositions to both Dimott's and Collamore's § 2255 petitions, both filed within six weeks of its opposition to Casey's petition. While the majority attributes the Government's decision not to advance this argument in response to Casey's petition as inadvertence rather than strategy, I do not so conjecture. This strikes me as an appropriate basis for finding that the Government displayed its "clear and accurate understanding of the timeliness issue" and "knew that it had an arguable statute of limitations defense," but relinquished that argument. Wood, 566 U.S. at 474 (internal quotation marks and citation omitted).

Finally, the majority's finding that Casey failed to satisfy his burden of proving by a preponderance of the evidence that he was sentenced under the residual clause is equally unpersuasive. The majority pronounces that, in the face of a silent record, placing the burden on a petitioner "makes sense . . . because they were certainly present at sentencing and knowledgeable about the conditions under which they were sentenced." I fail to see what could better satisfy the majority's

evidentiary requirement that petitioner was sentenced under the residual clause than a finding by the sentencing judge, who was also "certainly present at sentencing" and far more knowledgeable of his own sentencing decisions. I have a difficult time thinking of what further evidence, in the face of a silent record, could be more convincing. The majority suggests in a footnote that Casey could have asked for a remand to the district court to prove that he was sentenced solely under the residual clause; however, such a request would have been nonsensical after the habeas judge clearly already found as much. See Casey, 2016 WL 6581178, at *3.

Given the deference owed to the habeas judge here, I would find that, under any of the standards announced by our sister circuits and discussed by the majority,[9] Casey has shown that he

---

[9] As the majority explains, there is an emerging split amongst the circuit courts as to the burden of proof placed on petitioners facing a silent record who, through a § 2255 petition, maintain that their sentences were enhanced pursuant to the residual clause of the ACCA. The Fifth Circuit described this split well in Taylor, 873 F.3d at 480-81 (citing Beeman, 871 F.3d at 1221-22 (finding that a defendant must show that "more likely than not" he was sentenced according to the residual clause); Snyder, 871 F.3d 1122 (10th Cir. 2017) (stating that courts should look to the law at the time of sentencing and determine whether a defendant's convictions fell within the scope of the other ACCA clauses); Geozos, 870 F.3d at 895 (holding that, "when it is unclear whether a sentencing court relied on the residual clause in finding that a defendant qualified as an armed career criminal, but it may have, the defendant's § 2255 claim 'relies on' the constitutional rule announced in Johnson II." (citing Winston, 850 F.3d at 682)); Winston, 850 F.3d at 682 (finding that imposing the burden on movants would result in "selective application" of the new rule announced in Johnson II)).

was sentenced pursuant to the residual clause and thus brought forth a timely Johnson II claim. This Court should analyze the matter accordingly. As the district court did below, we would accordingly need to address whether Casey's claim is procedurally defaulted for failing to raise it at trial or on direct appeal. The district court found there to be cause for Casey not having raised the issue, but that, while believing that Mathis casts significant doubt on the vitality of Duquette, it was bound by this Circuit's precedent to find that Maine burglary is generic and also falls under the enumerated clause. Casey, 2016 WL 6581178, at *5. Accordingly, it found that Casey did not suffer any actual prejudice. Id. at *4.

The district court was correct in its ruling given its boundaries. However, this Court is not so constrained. See United States v. Tavares, 843 F.3d 1, 11 (1st Cir. 2016) (stating that the court may overturn prior panel decisions when controlling authority is subsequently announced or when, in light of new authority, the panel would likely have changed its "collective mind." (quoting United States v. Pires, 642 F.3d 1, 9 (1st Cir. 2011))). Mathis is subsequent controlling authority which calls into question the vitality of our opinion in Duquette. See United States v. Whindleton, 797 F.3d 105, 113 (1st Cir. 2015) ("An exception to the doctrine of stare decisis applies if '[a]n existing panel decision [is] undermined by controlling authority,

subsequently announced, such as an opinion of the Supreme Court . . . ." (alterations in original) (citing United States v. Rodríguez-Pacheco, 475 F.3d 434, 441 (1st Cir. 2007))). In Duquette, we found that because the Maine burglary statute contains all of the elements of generic burglary, under Taylor, 495 U.S. 575, it qualified as generic burglary under the ACCA's enumerated clause. However, Mathis has undermined this analysis, instead calling for us to determine if one (or more) of the elements of Maine burglary is broader than the corresponding element of the generic offense. If so, then Maine's burglary statute, like Iowa's burglary statute, cannot fall under the ACCA's enumerated clause.

While we have not conducted this re-analysis of Duquette, Casey's petition for habeas relief calls for us to do so to determine if Casey suffered actual prejudice. Addressing this more difficult issue -- which the majority seeks to avoid -- is necessary to decide this case.[10]

Accordingly, I join in affirming the outcome proposed by the majority in the cases of Dimott and Collamore, and respectfully

---

[10] As pointed out by the district court below, Casey, 2016 WL 6581178, at *5 n.16, and the Government in its Rule 28(j) letter to the Court, numerous federal circuits have recently reviewed state burglary statutes in light of Mathis to determine whether they continue to qualify as enumerated felonies under the ACCA.

dissent from the majority in regards to Casey's petition for habeas

relief.