# United States Court of Appeals
## For the First Circuit

No. 22-1243

UNITED STATES,

Appellee,

v.

DEREK CAPOZZI,

Defendant, Appellant.


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]


Before

Barron, Chief Judge,
and Howard, Circuit Judge.*


Dana Goldblatt, with whom The Law Office of Dana Goldblatt
was on brief, for appellant.

Robert E. Richardson, Assistant United States Attorney, with
whom Rachael S. Rollins, United States Attorney, was on brief, for
appellee.

---

* Judge Selya heard oral argument in this case and
participated in the initial semble thereafter. His death on
February 22, 2025 ended his involvement in this case. The
remaining two panelists issued this opinion pursuant to 28 U.S.C.
§ 46(d).

July 2, 2025

**HOWARD, Circuit Judge.** Derek Capozzi brings two challenges to the district court's disposition of his motion to vacate his sentence under 28 U.S.C. § 2255. First, he argues that Johnson v. United States, 576 U.S. 591 (2015) ("Johnson II"), invalidates his enhanced sentence imposed under the Armed Career Criminal Act ("ACCA"). Second, he argues that although the court correctly vacated one of his convictions, it abused its discretion when it corrected that error by vacating the sentence for that conviction rather than conducting a new sentencing proceeding to resentence him for all his related convictions. Because Capozzi is time-barred from making the Johnson II claim and fails to meet his burden for the abuse-of-discretion claim, we affirm.

## I.

## A.

We begin with a brief overview of the two bodies of law that intersect to form the core of Capozzi's appeal: the ACCA and the Antiterrorism and Effective Death Penalty Act ("AEDPA").

The ACCA imposes a mandatory fifteen-year minimum sentence on defendants convicted of violating 18 U.S.C. § 922(g) who have previously been convicted of three "violent felon[ies]." 18 U.S.C. § 924(e). As originally enacted, the statute defines a "violent felony" as any crime that is punishable by greater than one year of imprisonment and that: (1) "has as an element the use, attempted use, or threatened use of physical force against the

person of another" (the force clause); (2) is "burglary, arson, or extortion [or] involves the use of explosives" (the enumerated clause); or (3) "otherwise involves conduct that presents a serious risk of physical injury to another" (the residual clause). Id. § 924(e)(2)(B). In Johnson II, however, the Supreme Court struck down the residual clause as unconstitutional, holding that the clause's language was too vague to comport with due process principles. 576 U.S. at 597. The Court accordingly severed the clause from the statute, prohibiting future sentences from being enhanced under the residual clause. Id. at 606.

The other law at issue, AEDPA, was enacted "to reduce delays in the execution of state and federal criminal sentences." Woodford v. Garceau, 538 U.S. 202, 206 (2003). As relevant here, AEDPA imposes strict timeliness requirements on federal inmates' motions to "vacate, set aside, or correct" a sentence based on its asserted violation of federal law.[1] 28 U.S.C. § 2255(a). Generally, AEDPA imposes a one-year statute of limitations on such motions, which begins to run when "the judgment of conviction becomes final." Id. § 2255(f)(1). But, if the § 2255 motion is based on a right that "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral

---

[1] Such motions are roughly analogous to a state inmate's habeas-corpus petition. See Hill v. United States, 368 U.S. 424, 427 (1962).

- 4 -

review," the one-year countdown resets on the "date on which the right asserted was initially recognized by the Supreme Court." Id. § 2255(f)(3). In other words, when the Supreme Court articulates a substantive constitutional right for the first time and determines that it applies to cases already decided, a federal inmate has one year from the date of the Supreme Court's decision to bring a claim asserting that right in federal court. If the Supreme Court's decision does not newly announce a substantive constitutional right or is not retroactively applicable, however, the clock is not reset, and AEDPA bars lower courts from hearing a § 2255 motion grounded in that decision more than one year after the inmate's final judgment of conviction. See, e.g., Págan-San Miguel v. United States, 736 F.3d 44, 45 (1st Cir. 2013) (per curiam) (denying application for leave to file a § 2255 motion where petitioner relied on Supreme Court decisions that "did not announce a new rule of constitutional law"); Butterworth v. United States, 775 F.3d 459, 465-68, 470 (1st Cir. 2015) (affirming denial of relief where petitioner relied on Supreme Court decision that "was not retroactively applicable on collateral review").

Johnson II is an example of the former kind of case: it announced a "substantive rule of law" that applies retroactively on collateral review and reopened federal courts to § 2255 motions from inmates sentenced under the ACCA's residual clause for one year following its announcement. Shea v. United States, 976 F.3d

- 5 -

63, 65-66 (1st Cir. 2020) (citing Welch v. United States, 578 U.S. 120, 130 (2016)).

Mathis v. United States, 579 U.S. 500 (2016), on the other hand, is an example of the latter kind of case. In Mathis, the Supreme Court clarified how lower courts should determine whether a prior conviction under an "alternatively phrased statute" counts as a "violent felony" under the ACCA's enumerated clause. See 579 U.S. at 517. In what it described as "a straightforward case," the Court drew on "longstanding principles" from its prior decisions to clarify that lower courts "should do what [the Court] [has] previously approved," namely, compare only the elements of the statute at issue to the generic definition of the relevant offense in the enumerated clause. See id. at 509, 519. While the Supreme Court outlined the contours of the enumerated clause in Mathis, providing guidance to courts applying the ACCA thereafter, it "did not announce a new, retroactively applicable rule" in that case for purposes of AEDPA's timeliness bar. Dimott v. United States, 881 F.3d 232, 237 (1st Cir. 2018) (citing Mathis, 579 U.S. at 519).

Thus, Johnson II opened a one-year window for § 2255 motions, while Mathis did not. AEDPA consequently prohibits federal courts from hearing retroactive Johnson II claims when the claimant relies on a nonretroactive case like Mathis as a steppingstone to argue that the sentencing court must have used

the stricken residual clause in applying the ACCA enhancement. Id. at 237-38. Otherwise, litigants could circumvent AEDPA's timeliness bar by shoehorning into a Johnson II claim any sentencing court's error in applying the force or enumerated clauses by construing the sentence to necessarily fall under the "catch-all" criteria of the residual clause. Id. ("To hold otherwise would create an end run around AEDPA's statute of limitations. It would allow petitioners to clear the timeliness bar by bootstrapping their Mathis claims onto Johnson II claims . . . . This cannot be right.").

### B.

With all this in mind, we turn to the case at hand. In 1999, a jury convicted Capozzi on three counts: possession of a firearm as a felon under 18 U.S.C. § 922(g)(1); attempted extortion under 18 U.S.C. § 1951(a); and use of a firearm in furtherance of a crime of violence under 18 U.S.C. § 924(c). At sentencing, the district court determined that the ACCA subjected Capozzi to a fifteen-year minimum sentence because eight of his previous convictions in Massachusetts state courts qualified as ACCA predicate offenses: five "breaking and entering in the daytime" ("B&E") convictions under Mass. Gen. Laws ch. 266, § 18; one "entering without breaking" conviction under Mass. Gen. Laws ch. 266, § 17; one "assault and battery with a dangerous weapon" conviction under Mass. Gen. Laws ch. 265, § 15; and one "assault

and battery of a police officer" conviction under Mass. Gen. Laws ch. 265, § 13D. The record of the original sentencing is unclear as to which ACCA clause(s) the court viewed the convictions to correspond. Still, accounting for the ACCA enhancement, the court sentenced Capozzi to a total of 360 months in prison: 300 months for the felon-in-possession count; 240 months for the attempted-extortion count to be served concurrently with the felon-in-possession sentence; and 60 months for the firearm-in-furtherance count to be served consecutively to the first 300 months. Capozzi directly appealed the convictions to this court but was unsuccessful. See United States v. Capozzi, 347 F.3d 327, 337 (1st Cir. 2003). The Supreme Court declined to review. Capozzi v. United States, 540 U.S. 1168 (2004).

        In 2005, Capozzi filed his first § 2255 motion, in which he claimed that his B&E convictions should not have counted as ACCA predicates. Citing Taylor v. United States, 495 U.S. 575 (1990), he noted that for a prior conviction to qualify as "burglary" for the purposes of the ACCA's enumerated clause, see 28 U.S.C. § 2255(e)(2)(B)(ii), the prior conviction must involve unlawful entry into a "building or structure." Capozzi contrasted the Massachusetts statute giving rise to his B&E convictions, which criminalizes breaking and entering not only a building but also a "ship or motor vehicle or vessel." See Mass. Gen. Laws ch. 266, § 18. He argued that, because § 18 encompasses conduct that does

not fit within the generic definition of "burglary" outlined in Taylor -- "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime," 495 U.S. at 598 -- the government could not have properly treated his B&E convictions as "burglaries" under the ACCA's enumerated clause absent a showing that he specifically pled guilty to breaking and entering a building, as opposed to a "ship or motor vehicle or vessel," Mass. Gen. Laws ch. 266, § 18 (1999).

The district court held that the government did make that showing, however. The court reviewed the presentence report ("PSR") used during sentencing and concluded that it "explicitly indicated that at least four of [Capozzi's] prior convictions involved buildings rather than ships, vessels, or vehicles." Capozzi v. United States, No. 05-10171, 2007 WL 162247, at *6 (D. Mass. Jan. 12, 2007) ("Capozzi I"). Thus, the reviewing district court concluded, "the claim [was] barred." Id.

In 2015, within the one-year period after the Supreme Court issued its decision in Johnson II, Capozzi sought permission from this court to file a second or successive motion to vacate. His application was approved, and he filed a second § 2255 motion based on Johnson II. While the motion was still pending before the district court, he amended it and requested that the court also vacate his firearm-in-furtherance conviction in accordance

- 9 -

with the Supreme Court's decision in United States v. Davis, 588 U.S. 445 (2019).[2]

The district court granted the motion as to the firearm-in-furtherance conviction but denied it as to Capozzi's other requests for relief, including his Johnson II claim. Capozzi v. United States, 531 F. Supp. 3d 399, 407 (D. Mass. 2021) ("Capozzi II"). In so doing, the court reduced Capozzi's sentence by sixty months to reflect the consecutive sentence of that duration imposed for the vacated firearm-in-furtherance conviction. Id.

In denying Capozzi's Johnson II challenge to the ACCA enhancement, the district court reasoned that although Capozzi styled his challenge as one arising from Johnson II, it actually amounted to a Mathis claim because there was "no basis in the record for concluding that the Court sentenced [Capozzi] solely under the residual clause" as a Johnson II claim would require, concluding instead that "the Court likely sentenced under both [the enumerated and residual] clauses." Id. at 406-07. And because Mathis did not reset the § 2255 statute of limitations, see Dimott, 881 F.3d at 237, Capozzi was prohibited from asserting

_____

2   Capozzi also added a request to vacate his felon-in-possession conviction based on Rehaif v. United States, 588 U.S. 225 (2019), which the district court dismissed for lack of jurisdiction. Capozzi v. United States, 531 F. Supp. 3d 399, 405 (D. Mass. 2021). He does not pursue this issue on appeal.

- 10 -

that case as a basis for relief in his second § 2255 motion, more than a decade after his conviction was finalized. Capozzi II, 531 F. Supp. 3d at 406-07. The district court thus concluded that it lacked jurisdiction to hear the claim. Id. at 406.

Capozzi appeals on two grounds. He argues (1) that the district court had jurisdiction to hear his Johnson II-styled claim and (2) that the court erred in opting to simply vacate the sixty-month consecutive sentence instead of holding a resentencing hearing. We address each argument in turn.

## II.

## A.

We review de novo the district court's denial of a habeas petition on procedural grounds. Dimott, 881 F.3d at 236.

AEDPA provides us with jurisdiction to reach the merits of Capozzi's ACCA claim if the right that it asserts derives from Johnson II, but it bars jurisdiction if the right derives from some other non-retroactive case such as Mathis.[3] To present a Johnson II claim, Capozzi must show that his "original ACCA sentence [was] based solely on the residual clause." Id. In the absence of express statements from the district court judge

_____

[3] The government contends that Capozzi waived any appeal to the district court's determination that he brought a Mathis claim because he did not expressly address that point in his opening brief. Because we ultimately lack jurisdiction over Capozzi's claim, we need not decide the waiver question.

presiding over the sentencing, we afford "due weight" to any findings made by that same judge while presiding over subsequent postconviction motions when that judge is "describing [her] own decisions at sentencing."[4]  Id. at 237.

Here, when the district court originally sentenced Capozzi under the ACCA, it made no express reference to the ACCA's definitional clauses.  But the same district court judge did make statements on the matter in both the 2005 and later postconviction proceedings.  When reviewing Capozzi's 2005 motion, the court concluded that Capozzi had failed to show that his prior convictions could not qualify as "violent felonies" under the ACCA's enumerated clause.  The court explained that the PSR used during the original sentencing "explicitly indicated that at least four of Petitioner's prior convictions involved buildings."  Capozzi I, 2007 WL 162247, at *6.  The court did not once mention whether the burglaries were "otherwise dangerous" or use any language from the residual clause.  And when reviewing Capozzi's 2022 motion, the same district court judge held that there was "no basis in the record for concluding that the Court sentenced Petitioner solely under the residual clause," explicitly stating

---

[4] A § 2255 motion is usually heard by the district court judge that presided over the sentencing proceedings.  See 28 U.S.C. § 2255(a) ("A prisoner may . . . move the court which imposed the sentence to vacate, set aside, or correct the sentence.").

what was implicit in the 2005 opinion.[5] Capozzi II, 531 F. Supp. 3d at 407.

Affording these findings "due weight," as we must, see Dimott, 881 F.3d at 237, leads us to the conclusion that Capozzi's ACCA enhancement was not "based solely" on the residual clause, id. at 236.[6] As a result, Capozzi cannot make out a Johnson II challenge. Rather, because "the linchpin of [his] argument" is that his Massachusetts B&E convictions are for "nongeneric offense[s]" such that they "cannot qualify as [] ACCA predicate[s]," we agree with the district court that Capozzi's

---

[5] Contrary to Capozzi's objection, we do not read the district court's subsequent citation to United States v. Wilkinson, 926 F.2d 22 (1st Cir. 1991), as suggesting that all Massachusetts B&E convictions categorically qualify as ACCA predicates. See Capozzi II, 531 F. Supp. 3d at 407. The court cited Wilkinson only after prefacing that "there is no basis in the record for concluding that the Court sentenced Petitioner solely under the residual clause," indicating that the court conducted the requisite case-specific inquiry. See id. Its subsequent citation to Wilkinson is more naturally read as supportive authority for its conclusion that, given the record's clarity that Capozzi entered a building in the commission of the relevant B&E offenses, the sentencing court could permissibly rely on the enumerated clause at his original sentencing. Indeed, had the district court attributed the broad proposition to Wilkinson that Capozzi intimates, it would have obviated the need for the rest of its analysis, as it would have been manifestly clear that Capozzi's convictions qualified as ACCA predicates under the enumerated clause.

[6] We need not determine whether the court relied on the residual clause elsewhere because the four B&E convictions alone satisfy the ACCA's three-felony minimum. See 18 U.S.C. § 924(e)(1).

"petition[] depend[s] on Mathis, and [is] thus untimely." See id. at 237-38.

Capozzi acknowledges the district court's finding on this score, but he maintains that the court's reliance on the enumerated clause at the time of his original sentencing was legally impossible, and thus mistaken, under Taylor v. United States, 495 U.S. 575 (1990). Irrespective of its merits, this argument cannot provide Capozzi with a basis for relief. Taylor was decided well before Capozzi's conviction and sentencing; AEDPA thus requires him to have brought any § 2255 motion on that ground within one year of the final judgment against him. 28 U.S.C. § 2255(f). Indeed, Capozzi did make such a challenge in his first § 2255 motion in 2005. But the Supreme Court's subsequent decision in Johnson II does not provide him with an opportunity to relitigate the claims he raised then, as none invoked the residual clause. See Capozzi I, 2007 WL 162247, at *1-5. And now, any claim asserting error in the application of the enumerated clause based on Taylor is too late for us to hear.

To summarize, Capozzi cannot clear the threshold of establishing a Johnson II claim because he cannot show that his sentence was "solely based" on the residual clause. See Dimott, 881 F.3d at 237. As a result, he pivots to arguing that if the court did rely on the enumerated clause, it erred under Taylor. But we lack jurisdiction to hear such a claim, regardless of

- 14 -

whether it relies on Mathis or Taylor, as the statute of limitations on such a claim has lapsed. For challenges to sentences brought based on Johnson II, AEDPA's statute of limitations resets only as to those sentences imposed in fact under the ACCA's residual clause, not for those that purportedly should have been imposed under the residual clause because their imposition under another clause was flawed. Because this case is one of the latter, and more than a year has passed since the judgment of conviction against him became final, AEDPA bars federal courts from hearing Capozzi's ACCA claim.

**B.**

This leaves only the resentencing issue. "We review the district court's determination of the appropriate remedy for a § 2255 violation for abuse of discretion." United States v. Torres-Otero, 232 F.3d 24, 29-30 (1st Cir. 2000). This is an extremely deferential standard. See United States v. Walker, 665 F.3d 212 (1st Cir. 2001) ("An abuse of discretion occurs 'when a relevant factor deserving of significant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales.'" (quoting United States v. Nguyen, 542 F.3d 275, 281 (1st Cir. 2008))).

- 15 -

After granting a § 2255 motion, a district court may award one of four remedies: vacate the sentence, order a de novo resentencing, grant a new trial, or correct the sentence. 28 U.S.C. § 2255(b). Capozzi admits that the district court had the discretion to adjust his sentence, but he maintains that because the sentence for his firearm-in-furtherance conviction was "intertwined" with the other two sentences, the court should have awarded him a plenary resentencing. In support, he relies on language from our decision in United States v. Rodriguez, in which we held that "where the Guidelines contemplate an interdependent relationship between the sentence for the vacated conviction and the sentence for the remaining convictions -- a sentencing package -- a district court may, on a petition under 28 U.S.C. § 2255, resentence on the remaining convictions." 112 F.3d 26, 30-31 (1st Cir. 1997) (emphasis added) (footnotes omitted).

To explain how the district court abused its discretion in the manner recognized in Rodriguez, however, Capozzi points only to the government's concession that "under current jurisprudence, the Defendant would not be an [armed career criminal]." He cites no cases that reverse a district court for failing to conduct a de novo resentencing after vacating an intertwined conviction, nor any in which a court ordered a resentencing because jurisprudential standards have evolved. Further, Capozzi presented the Rodriguez case and his equitable

- 16 -

argument to the court below, and the record indicates that the court considered both in its decision.  Thus, we cannot find that the court abused its considerable discretion on these facts by opting to correct Capozzi's sentence without doing so.

## III.

For the foregoing reasons, we **affirm**.