RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0127p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

BRIAN D. WILLIAMS,

　　　　　　　　　*Petitioner-Appellant*,

　　*v*.

UNITED STATES OF AMERICA,

　　　　　　　　　*Respondent-Appellee*.

No. 17-3211

On Remand from the En Banc Court of the United States Court of Appeals for the Sixth Circuit.

United States District Court for the Northern District of Ohio at Cleveland.
Nos. 1:06-cr-00244-1; 1:16-cv-00520—Solomon Oliver Jr., District Judge.

Decided and Filed:  June 11, 2019

Before:  MERRITT, MOORE, and ROGERS, Circuit Judges.

_____

MOORE, J., delivered the opinion of the court in which MERRITT and ROGERS, JJ., joined.  MERRITT, J. (pg. 24), delivered a separate concurring opinion.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge.  This case returns to us on remand from our en banc court in light of the en banc court's decision in *United States v. Burris*, 912 F.3d 386 (6th Cir. 2019) (en banc).  Since we last addressed Petitioner-Appellant Brian Williams's collateral attack on his federal sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e); *see Williams v. United States*, 875 F.3d 803 (6th Cir. 2017), and while granting Williams's petition for rehearing en banc, 882 F.3d 1169 (6th Cir. 2018), our court has raised concerns regarding Williams's ability to raise a cognizable motion for relief under 28 U.S.C. § 2255 in light of various provisions constraining collateral review.  In this opinion,

per the en banc court's remand, we address those concerns in light of the comprehensive argument before the en banc court and then proceed to address the merits of Williams's motion in light of *Burris*. Because Williams qualifies for review under § 2255 and because no ACCA provision justifies his sentence, we **VACATE** Williams's sentence and **REMAND** for resentencing.

## I. BACKGROUND

### A. Williams's Conviction for Ohio Felonious Assault

In early 2000, Williams was indicted for, pleaded guilty to, and was convicted of attempted felonious assault in violation of Ohio Rev. Code § 2903.11(A). R. 39-3 (State Indictment and Journal Entry) (Page ID #227–28); R. 48-1 (State Sentencing Tr. at 7–8, 11) (Page ID #389–90, 393). Ohio Rev. Code § 2903.11(A) provides:

> No person shall knowingly do either of the following:
>
> (1) Cause serious physical harm to another . . . ;
> (2) Cause or attempt to cause physical harm to another . . . by means of a deadly weapon or dangerous ordnance.

Ohio law in turn defines "serious physical harm," as included in § 2903.11(A)(1), to include "[a]ny mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment." Ohio Rev. Code § 2901.01(A)(5)(a). As Williams points out, none of the *Shepard* documents surrounding that conviction, *see Shepard v. United States*, 544 U.S. 13, 26 (2005), makes clear which of the two prongs of § 2903.11(A) Williams was convicted of having violated. Appellant's Br. at 16.[1] The Government does not dispute this characterization of the *Shepard* documents.

### B. Williams's Sentencing as an Armed Career Criminal

In 2006, Williams was indicted for, pleaded guilty to, and was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) in the U.S. District Court for the Northern District of Ohio. R. 1 (Indictment) (Page ID #3–4); R. 19 (Judgment at 1) (Page ID

---

[1]We use this designation to reference the parties' supplemental briefs before the en banc court. We use the longer designation "Appell[ant/ee]'s Panel Br." to refer to the parties' prior submissions to this panel.

#39).   The ACCA applied then (and continues to apply) to anyone convicted of violating § 922(g) who "has three previous convictions . . . for a violent felony."   18 U.S.C. § 924(e)(1). The probation department recommended that Williams be sentenced as an armed career criminal under the ACCA, and the sentencing judge, Judge Dowd, agreed.   *See* R. 18 (Sentencing Mem. Op. at 4) (Page ID #37); R. 25 (Sentencing Tr. at 2) (Page ID #116); Presentence Report ("PSR") at 1, 7–8.   Williams's 2000 conviction for attempted felonious assault under Ohio Rev. Code § 2903.11(A) was one of the three prior convictions on which the probation department—and, ultimately, Judge Dowd—based this conclusion.   *See* PSR at 1, 7–8; *see also* R. 1 (Indictment) (Page ID #3–4).

At the time, the ACCA defined "violent felony" to include any felony punishable by over one year of imprisonment that either:

(i)   has as an element the use, attempted use, or threatened use of physical force against the person of another ["elements clause"]; or

(ii)   is burglary, arson, or extortion, involves use of explosives ["enumerated-crimes clause"], or otherwise involves conduct that presents a serious potential risk of physical injury to another ["residual clause"] . . . .

18 U.S.C. § 924(e)(2)(B).   The parties agree that neither Judge Dowd nor probation specified the grounds on which Williams's 2000 conviction qualified as an ACCA predicate and that nothing else in the sentencing record sheds further light.   *See* Appellant's Br. at 41; Appellee's Br. at 5, 53.   Williams was sentenced to 180 months in prison.   R. 19 (Judgment at 2) (Page ID #40).

## C.  Prior § 2255 Petitions and Intervening Legal Developments

Williams soon began seeking postconviction relief.   In 2007, he moved pro se to vacate his sentence under 28 U.S.C. § 2255, claiming ineffective assistance of counsel, lack of federal jurisdiction for failure to satisfy the interstate-commerce element, and double jeopardy.   R. 21 (2007 Mot. to Vacate at 4–7) (Page ID #55–58).   The district court denied his motion.   R. 29 (Dist. Ct. Op. & Order) (Page ID #185–87).

In 2010, Williams again moved pro se to vacate his sentence under § 2255.   In that motion, he maintained that § 924(e)(1) did "not apply to him," arguing that at least one of his prior convictions did not "fit the criteria for application [of the] 924(e)(1) enhancement" and

citing the Supreme Court's recent ruling that the ACCA's "phrase 'physical force' means *violent force*." *See* R. 31 (2010 Mot. to Vacate at 1–2) (Page ID #191–92); *Curtis Johnson v. United States* ("*Johnson I*"), 559 U.S. 133, 140 (2010). Williams also argued that the sentence imposed on him violated *United States v. Booker*, 543 U.S. 220 (2005), and his right to a jury trial. R. 31 (2010 Mot. to Vacate at 2–3) (Page ID #192–93). The district court transferred the motion to this court for authorization to file a second or successive motion, R. 32 (Transfer Order) (Page ID #195), and we denied Williams's request, R. 33 (2010 CA6 Order) (Page ID #196–97).

In 2012, a panel of our court ruled in *United States v. Anderson*, 695 F.3d 390 (6th Cir. 2012), that felonious assault under Ohio Rev. Code § 2903.11(A) qualifies as a violent felony under the ACCA's elements clause. *Id.* at 402. The following year, a separate panel ruled that aggravated assault under Ohio Rev. Code § 2903.12(A), which is functionally "identical" to the felonious assault statute, *Anderson*, 695 F.3d at 402, qualifies as a violent felony under the ACCA's residual clause. *United States v. Perry*, 703 F.3d 906, 910 (6th Cir. 2013). Our court did not cite *Anderson* in that decision.

In 2013, Williams again sought authorization from our court to file a second or successive motion under § 2255, "seeking to pursue the following grounds for relief: (1) ineffective assistance of counsel during plea bargaining; and (2) the unconstitutional application of 18 U.S.C. § 922(g)(1) to his case." R. 34 (2013 CA6 Order) (Page ID #199–200). We again denied his request. *Id.* (2013 CA6 Order at 2) (Page ID #200).

In 2014, Williams filed a third pro se motion in the district court under § 2255. R. 35 (2014 Mot. to Vacate at 1) (Page ID #201). In that motion, Williams argued that *Descamps v. United States*, 570 U.S. 254 (2013), was retroactive and had established that his having been sentenced under the ACCA was "in conflict with the jury trial right as explained in *Apprendi v. New Jersey*, 530 U.S. 466 (2000)." R. 35 (2014 Mot. to Vacate at 1) (Page ID #201). The district court denied his motion. R. 36 (Dist. Ct. Order at 2) (Page ID #206).

**D. *Johnson II* and the § 2255 Petition at Issue Here**

In June 2015, in *Samuel Johnson v. United States* ("*Johnson II*"), 135 S. Ct. 2551 (2015), the Supreme Court ruled that the residual clause of the ACCA was unconstitutionally vague. *Id.*

at 2557.  In March 2016, this time represented by counsel, Williams moved (again in the district court) to vacate his sentence under § 2255 in light of the Supreme Court's due-process-based ruling in *Johnson II*.  R. 39 (2016 Mot. to Vacate at 1, 3) (Page ID #210, 212).  That April, the Supreme Court clarified that *Johnson II* was "a substantive decision and so has retroactive effect . . . in cases on collateral review."  *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016).  The district court, meanwhile, transferred Williams's § 2255 motion to this court, R. 42 (Transfer Order) (Page ID #240–41), and this court, noting that "much has changed in the four years since we decided *Anderson*," granted Williams authorization, R. 43 (2016 CA6 Order at 4, 6) (Page ID #245, 247).  Both we and the district court, however, rejected Williams's claim on the merits, reasoning that *Anderson* had not been abrogated and thus remained controlling, regardless of its ultimate wisdom.  *See Williams*, 875 F.3d at 807 (opinion of Rogers, J.); *id.* (Moore, J., concurring in the judgment); R. 49 (Dist. Ct. Order at 14) (Page ID #410).  Our court granted rehearing en banc, 882 F.3d 1169 (6th Cir. 2018), and later issued letters directing the parties to address in their briefing the court's ability to entertain Williams's clearly second-in-time—and potentially duplicative—motion for postconviction relief under § 2255.  *See* Doc. 33 (Letter of Mar. 9, 2018); Doc. 34 (Letter of Mar. 20, 2018).  Oral argument was heard by the en banc court on June 13, 2018, during which time we probed both parties further on the issues raised by our briefing letters.

That same day, we also heard oral argument en banc in *Burris*, in which we probed in more detail whether felonious assault under Ohio Rev. Code § 2903.11(A)(1) qualifies as a violent felony under the ACCA or (for our purposes identical) elements clause of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G").  *Compare* U.S.S.G. § 4B1.2(a)(1), *with* 18 U.S.C. § 924(e)(2)(B)(i).  In our recently released *Burris* decision, the en banc court reasoned that Ohio Rev. Code § 2903.11(A)(1) *is* a categorical mismatch with the ACCA's and Guidelines' elements clauses, notwithstanding *Anderson*.  Following that decision, the en banc court in this (*Williams*) case ruled that *Anderson* has been overruled and remanded this case to our panel for further proceedings in light of that determination.  We thus proceed to consider Williams's case.

## II.  DISCUSSION

This case on remand requires us to consider (1) whether Williams is entitled to consideration of his claims on collateral review and, if he is, (2) whether he is in fact entitled to relief.  Answering both questions in the affirmative, we **VACATE** Williams's sentence and **REMAND** for resentencing.

### A.  AEPDA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (codified as amended in scattered sections of the U.S. Code), was enacted "to further the principles of comity, finality, and federalism."  *Williams v. Taylor*, 529 U.S. 420, 436 (2000).  In order to do that, AEDPA plainly "restrict[ed] the availability of relief to habeas petitioners" in general, *Felker v. Turpin*, 518 U.S. 651, 664 (1996), and it "greatly restrict[ed] the power of federal courts to award relief to state prisoners who file second or successive habeas corpus applications," *Tyler v. Cain*, 533 U.S. 656, 661 (2001).  Nevertheless, despite its clear goals, "in a world of silk purses and pigs' ears, the Act is not a silk purse of the art of statutory drafting."  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

One provision, 28 U.S.C. § 2254, applies to prisoners in state custody; another applies to prisoners in federal custody, 28 U.S.C. § 2255.  A third section, 28 U.S.C. § 2244, provides broader guidance.  For one, that section allows federal judges to dismiss duplicative habeas claims brought by federal prisoners that have already been adjudicated on the merits by a federal court, but it includes the express caveat "except as provided in section 2255."  *Id.* § 2244(a); *see also In re Hanserd*, 123 F.3d 922, 930 (6th Cir. 1997).  Second, it states that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed."  28 U.S.C. § 2244(b)(1).  Third, it mandates that prisoners seeking to file a "second or successive" habeas application first obtain "an order authorizing the district court to consider the application," *id.* § 2244(b)(3)(A), and it sets out the procedures for obtaining such authorization, *id.* § 2244(b)(3)(A)–(D).  Fourth, it requires district courts to "dismiss any claim presented in a second or successive application that the court of appeals has

authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section." *Id.* § 2244(b)(4).

Section 2255, meanwhile, refers back to § 2244 in applying the following provision to federal prisoners:

> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—
>
> > (1)  newly discovered evidence . . . or
> >
> > (2)  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h).  The threshold issue in this case is whether our court is permitted to adjudicate Williams's claim in light of these provisions.

**B.  Jurisdiction**

"[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore [we] must raise and decide jurisdictional questions that the parties either overlook or elect not to press."  *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *see also Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d 604, 607 (6th Cir. 1998). Here, the en banc court did raise such jurisdictional issues, *see* Doc. 33 (Letter of Mar. 9, 2018); Doc. 34 (Letter of Mar. 20, 2018), and they were argued before the en banc court.  For its part, the Government conceded that none of the AEDPA provisions at issue here is jurisdictional. Appellee's Br. at 27 & n.6, 38.  The Government's reasoning is helpful and persuasive, but we "have an independent obligation to" ensure our own jurisdiction, *see Henderson*, 562 U.S. at 434; *Douglas*, 150 F.3d at 607, and jurisdiction is not the kind of thing that can be waived or forfeited, *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017); *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934).

We now address the threshold statutory questions that were argued before the en banc court and conclude that there is no threshold defect here.  Two AEDPA provisions raise potential such concerns:  § 2244(b)(1) ("A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed."),

and § 2255(h) ("A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain (1) newly discovered evidence . . . or (2) a new rule of constitutional law . . . .").**2**  We conclude that § 2244(b)(1) does not apply to a federal prisoner like Williams**3** and that the substantive requirements of § 2255(h) are nonjurisdictional.**4**

### 1. Section 2244(b)(1)

With regard to § 2244(b)(1), we start and end with the text.  Section § 2244(b)(1) reads: "A claim presented in a second or successive habeas corpus application *under section 2254* that was presented in a prior application shall be dismissed."  28 U.S.C. § 2244(b)(1) (emphasis added).  In other words, "[t]he limitations imposed by § 2244(b) apply only to a 'habeas corpus application under § 2254,' that is, an 'application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment *of a State court*.'"  *Magwood v. Patterson*, 561 U.S. 320, 332 (2010) (quoting § 2254(b)(1) (emphasis shifted)); *see also Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005) ("A *state prisoner* may not file [a second or successive habeas] petition without precertification by the court of appeals that the petition meets stringent criteria." (citing § 2244(b) (emphasis added)).  As the Government concedes, Appellee's Br. at 23–27, and as Williams points out, Appellant's Br. at 18–25, this statutory language makes clear that it does not apply to federal prisoners like Williams who are seeking relief under § 2255—a reading that is underscored by the fact that Congress clearly knew how to refer to federal prisoners (or all applicants) when it wanted to do so.  *See* 28 U.S.C. § 2244(a); *id.* § 2244(b)(3)(A); *see also Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1723 (2017) ("[U]sually at least, when we're engaged in the business of interpreting statutes we presume differences in language like this convey differences in meaning.").  The Government and Williams are not alone in their

---

**2**In a sense, § 2244(b)(4) ("A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless . . . the claim satisfies the requirements of this section.") also raises possible jurisdictional concerns.  We discuss below why it does not in fact have jurisdictional effect here.

**3**We need not address whether the language of § 2244(b)(1) is itself jurisdictional.

**4**We offer no opinion either on whether the procedural beginning of § 2255(h) ("[A] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals . . . .") is jurisdictional.  Because Williams has secured such authorization, *see* R. 43 (2016 CA6 Order at 6) (Page ID #247), he has satisfied that requirement, and thus any opinion on this question would be dicta.

joint reading: other circuit courts have at least gestured in this direction too. *See Moore v. United States*, 871 F.3d 72, 78 (1st Cir. 2017); *United States v. Winestock*, 340 F.3d 200, 204–05, 208 (4th Cir. 2003); *Stanko v. Davis*, 617 F.3d 1262, 1269 n.5 (10th Cir. 2010).

The main argument against this reading of § 2244(b)(1)'s plain text is that § 2255(h) refers to § 2244 when it states that "[a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain" one of the two threshold conditions. 28 U.S.C. § 2255(h); *see Taylor v. Gilkey*, 314 F.3d 832, 836 (7th Cir. 2002) ("Although § 2244 refers to § 2254 rather than § 2255, we have held that the cross-reference to § 2244 in § 2255[(h)] means that it is equally applicable to § 2255 motions." (citing *Bennett v. United States*, 119 F.3d 468 (7th Cir. 1997))). But as Williams observes, Appellant's Br. at 24 n.7, § 2255(h)'s reference to § 2244's certification requirement is much more sensibly read as referring to the portions of § 2244 that actually concern the certification procedures, *see* 28 U.S.C. § 2244(b)(3)—the provisions, in other words, that "provide[]" for how such a "motion [is to] be certified," *see id.* § 2255(h). By contrast, it makes no linguistic sense to direct a court to "certif[y] as provided in section 2244[(b)(1)]" that a motion contains the threshold conditions discussed in § 2255(h); what makes linguistic sense is to direct a court to certify that those preconditions are met in accordance with the procedures laid out in § 2244(b)(3).[5] There is, accordingly, "no reason to doubt that in" including the restrictive clause referring exclusively to state prisoners in § 2244(b)(1), "Congress said what it meant and meant what it said." *Loughrin v. United States*, 134 S. Ct. 2384, 2391 (2014).

It bears noting that two published cases from our court have suggested (though without any explanation) that § 2244(b)(1) *does* apply in § 2255 cases. *See Charles v. Chandler*, 180 F.3d 753, 758 (6th Cir. 1999) (per curiam); *In re Liddell*, 722 F.3d 737, 738 (6th Cir. 2013) (citing *Charles*). These statements do not, however, bind us. That is because, while we may not

---

[5]Perhaps understandably, then, the Seventh Circuit case from which that circuit adopted the wholesale importation of § 2244(b) into § 2255 was one that focused on the procedural requirements expressed in § 2244(b)(3). *See Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997) ("We take the phrase 'as provided in section 2244,' which appears in section 2255, to mean that in considering an application under section 2255 for permission to file a second or successive motion we should use the section 2244 standard, and thus insist only on a prima facie showing of the motion's adequacy [under § 2244(b)(3)(C)]."). It is not clear that the Seventh Circuit ever interrogated its later interpretation of that logic as extending to cover § 2244(b)(1) despite that subsection's glaring textual red flag. *See, e.g.*, *Taylor*, 314 F.3d at 836.

overrule the *holding* of a prior published case, *see Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985), "dictum in a prior decision—as opposed to a *holding*—does not bind future panels," *In re Campbell*, 874 F.3d 454, 464 (6th Cir.), *cert. denied*, 138 S. Ct. 466 (2017). And neither of those two cases *held* that § 2244(b)(1) was applicable because neither cited the provision for a proposition that was "necessary to the outcome." *See id.* (observing "that statements which are 'not necessary to the outcome' are [not holdings and thus] not binding on later panels" (quoting *United States v. Turner*, 602 F.3d 778, 785–86 (6th Cir. 2010))); *Charles*, 180 F.3d at 758 (stating that the federal petitioner was "not entitled to file a successive § 2255 motion to vacate because he seeks permission to file the same claims that have already been denied on the merits," but then ruling that petitioner had not, "[i]n any event, . . . made a prima facie showing of satisfying either one of the two criteria listed in § 2255"); *Liddell*, 722 F.3d at 738 (stating that a successive claim would be "barred" but that the federal movant had in any event failed to satisfy § 2255(h)).

Meanwhile, although at least one other circuit has found § 2244(b)(1) to be applicable to § 2255 movants on policy grounds, *see In re Baptiste*, 828 F.3d 1337, 1339 (11th Cir. 2016) ("Although § 2244(b)(1) explicitly applies to petitions filed under § 2254, which applies to state prisoners, it would be odd indeed if Congress had intended to allow federal prisoners to refile precisely the same non-meritorious motions over and over again while denying that right to state prisoners."), the Government is correct, *see* Appellee's Br. at 27, that such a reading is an unjustifiable contravention of plain statutory text. *See, e.g.*, *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 460 (2012) ("[N]o legislation pursues its purposes at all costs, and petitioners' purposive argument simply cannot overcome the force of the plain text." (citation and internal quotation marks omitted)).[6] We therefore hold that § 2244(b)(1) does not apply to federal prisoners like Williams seeking relief under § 2255.

---

[6]Even allowing that a truly "absurd" result could justify such a textual departure, *see, e.g.*, *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 6 (2000), the result here is not so outlandish. AEDPA, after all, was enacted "to further the principles of comity, finality, and federalism," *Williams v. Taylor*, 529 U.S. at 436, and two of those three considerations fall aside when it comes to federal prisoners, whose cases implicate no separate sovereign. Because it is not absurd to understand Congress as having intended to provide a marginally less restrictive regime for federal prisoners (whose § 2255 motions threaten no comity or federalism interests), we accept that "Congress said what it meant and meant what it said" when it drafted § 2244(b)(1). *Loughrin*, 134 S. Ct. at 2391.

**2. Section 2255(h)**

Section 2255(h), by contrast, clearly does apply to a federal prisoner like Williams. The question, then, is whether its substantive requirements pose any jurisdictional bar. "A rule is jurisdictional '[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional.'" *Gonzalez v. Thaler*, 565 U.S. 134, 141–42 (2012) (alteration in original) (quoting *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 515 (2006)). Understandably, then, courts generally look first to whether "[t]he terms of the provision" clearly indicate "that the provision was meant to carry jurisdictional consequences," but they may also look to factors like a provision's "placement within the" statute and "the singular characteristics of the review scheme that Congress created," which reflect the statute's purpose. *See Henderson*, 562 U.S. at 438–40; *accord Gonzalez v. Thaler*, 565 U.S. at 143–44 (looking to statutory text, operation, and purpose).

Williams rightly identifies that the closest analogy for this question is to *Gonzalez v. Thaler*, in which the Supreme Court analyzed the highly comparable interplay between 28 U.S.C. § 2253's certificate-of-appealability (COA) provisions. *See* 565 U.S. at 137; 28 U.S.C. § 2253(c). There, the Court explained, "the only 'clear' jurisdictional language in § 2253(c) appears in § 2253(c)(1)," which provides that "an appeal may not be taken" in the absence of a COA. *Gonzalez v. Thaler*, 565 U.S. at 142 (quoting 28 U.S.C. § 2253(c)(1)). "The parties" had "agreed . . . for good reason," meanwhile, that § 2253(c)(2), which "speaks only to *when* a COA may issue—upon 'a substantial showing of the denial of a constitutional right,'" was non-jurisdictional. *Id.* at 143 (quoting 28 U.S.C. § 2253(c)(2)). In addition to noting that § 2253(c)(2) lacked "§ 2253(c)(1)'s jurisdictional terms," the Court explained, "it would be passing strange if, after a COA has issued, each court of appeals adjudicating an appeal were dutybound to revisit the threshold showing and gauge its 'substantial[ity]' to verify its jurisdiction." *Id.* (alteration in original). "That inquiry would be largely duplicative of the merits question before the court." *Id.*

The Court then concluded that § 2253(c)(3) was similarly non-jurisdictional, because "[l]ike § 2253(c)(2), it too reflects a threshold condition for the issuance of a COA," and "does not speak in jurisdictional terms." *Id.* (citation omitted). The contrast between provisions like § 2253(c)(1) and the other two subsections "underscore[d]" that "[a] defective COA is not equivalent to the lack of any COA." *Id.* Moreover, the Court explained, it was "telling . . . that Congress placed the power to issue COAs in the hands of a 'circuit justice or judge'" and that the corresponding requirement "binds only the judge issuing the COA"—which "would only compound the 'unfai[r] prejudice resulting from the *sua sponte* dismissals and remands that jurisdictional treatment would entail." *Id.* at 143–44 (alteration in original) (quoting *Henderson*, 562 U.S. at 434). And it would, for that matter, "thwart Congress's intent in AEDPA 'to eliminate delays in the federal habeas review process'" to require stage-by-stage vigilance regarding satisfaction of the COA threshold conditions, given that "[e]ven if additional screening of already-issued COAs for § 2253(c)(3) defects could further winnow the cases before the courts of appeals, that would not outweigh the costs of further delay from the extra layer of review." *Id.* at 144–45.

As Williams notes, obtaining authorization to file a second or successive § 2255 motion maps onto this analysis tightly:

> Just as the requirement of first obtaining a COA is jurisdictional, so too is the requirement that a movant obtain authorization from the court of appeals before filing a second or successive § 2255 motion in the district court. Furthermore, just as §§ 2253(c)(2) and (3) are not jurisdictional because they merely describe when a COA may issue and what the COA should contain, §§ 2255(h)(1) and (2) are not jurisdictional either.

Appellant's Br. at 34; *see* 28 U.S.C. § 2255(h)(1)–(2). Similarly, the only obligation that § 2255(h) places on the movant is seeking authorization; assessing the § 2255(h) threshold conditions themselves is wholly committed to the issuing "panel of the appropriate court of appeals." *See id.* ("A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain . . . ."). It would thus run afoul of the text's focus on the issuing panel, impose substantial added delay contrary to Congress's purpose, and risk unfair prejudice to movants who had fully complied with their own obligations to require each later panel to recommence review of the § 2255(h) threshold conditions.

We therefore hold, consistent with *Gonzalez v. Thaler*, that "[a] defective [authorization] is not [jurisdictionally] equivalent to the lack of any [authorization]." *See* 565 U.S. at 143. Thus (as the Government concedes, Appellee's Br. at 38), because any shortcomings in Williams's satisfaction of the § 2255(h) threshold conditions were not jurisdictional, invocation of any such defect was susceptible to forfeiture. *See, e.g.*, *Hamer*, 138 S. Ct. at 17.

### 3. Section 2244(b)(4)

The one possible counterpoint to this analysis is § 2244(b)(4). That subsection, as noted above, provides that "[a] district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section." 28 U.S.C. § 2244(b)(4). Although the Government does not read it this way, Doc. 48 (Appellee's Letter of June 14, 2018, at 2), the provision could arguably be read as requiring post-authorization vigilance in a way that would connote jurisdictionality.

There are at least two reasons that § 2244(b)(4) does not impose its own jurisdictional bar in this case. First, as the Government correctly observes, *see id.*, the provision does not "clearly state[]" a jurisdictional bar, *Gonzalez v. Thaler*, 565 U.S. at 141 (citation omitted), particularly given its focus on a single decisionmaker's review, at a particular stage, of "a threshold condition," *see id.* at 143. "And the fact that dismissal is 'mandatory' likewise does not change the nonjurisdictional character of this provision." Doc. 48 (Appellee's Letter of June 14, 2018, at 2) (quoting *Henderson*, 562 U.S. at 439); *see also Thaler*, 565 U.S. at 146 ("This Court, moreover, has long 'rejected the notion that "all mandatory prescriptions, however emphatic are . . . properly typed jurisdictional."'" (quoting *Henderson*, 562 U.S. at 439)). Rather, "[i]f properly invoked, mandatory claim-processing rules must be enforced, but they may be waived or forfeited." *Hamer*, 138 S. Ct. at 17. Thus, any failure by or before the district court would at least be waivable and forfeitable; it would not divest us of jurisdiction on appeal.

Second, even if we understand that provision as outlasting the district court's involvement in the case and being (when properly raised) "reviewable on appeal in the ordinary course" *see, e.g.*, *Holt v. United States*, 843 F.3d 720, 723 (7th Cir. 2016), any jurisdictional

concerns are subsumed by the provisions we have already discussed. That is because the "requirements of this section" that could conceivably be at issue, *see* 28 U.S.C. § 2244(b)(4), are either those expressed in § 2244 itself—which are either procedurally satisfied or inapplicable—or, via § 2244(a) ("No circuit or district judge shall be required to entertain an application . . . except as provided in section 2255."), the requirements in § 2255, which are either procedurally satisfied or nonjurisdictional. Thus, because those provisions do not otherwise raise a jurisdictional problem in this case, neither does § 2244(b)(4). We therefore hold that § 2244(b)(4) does not impose a jurisdictional bar on a federal prisoner like Williams seeking relief under § 2255 either.

## C. Whether Williams Is Entitled to Raise a Second or Successive Motion

Just because a provision is not jurisdictional, of course, does not mean that it is completely discretionary. Instead, as the Government notes, the AEDPA provisions that apply to Williams are "better understood as . . . mandatory claim-processing rule[s]." *See* Appellee's Br at 27 n.6. Such rules may, by their nature, "be waived or forfeited," *Hamer*, 138 S. Ct. at 17, and, as the Government acknowledges, it "did not raise these procedural impediments below or before the panel," Appellee's Br. at 38; *see also* R. 41 (Gov't's Response to § 2255 Mot.) (Page ID #230–39); R. 45 (Gov't's Supp. Response) (Page ID #354–60); Appellee's Panel Br. at 1–2, 8–12. Thus, as the Government points out, Appellee's Br. at 38, we may properly treat these arguments as forfeited, and we do so here. *Cf. Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000).

We can now turn to whether Williams has in fact satisfied one of § 2255(h)'s two alternative requirements. As we have explained in a comparable case, because this is a second or successive motion under § 2255, Williams "needs new law." *Potter*, 887 F.3d at 787. "In one sense, he has it. *Johnson [II]* announced a new rule of constitutional law when it invalidated the residual clause, and *Welch v. United States*, 136 S. Ct. 1257 (2016), made the rule retroactive to cases on collateral review." *Potter*, 887 F.3d at 787. Williams therefore, under binding precedent, must show that it is more likely than not "that the district court relied only on the

residual clause in sentencing" him.**7** *See id.*; *see also Dimott v. United States*, 881 F.3d 232, 243 (1st Cir. 2018) ("[T]o successfully advance a *Johnson II* claim on collateral review, a habeas petitioner bears the burden of establishing that it is more likely than not that he was sentenced solely pursuant to ACCA's residual clause."); *Beeman v. United States*, 871 F.3d 1215, 1221–22 (11th Cir. 2017) ("To prove a *Johnson* claim, the movant must show that—more likely than not—it was use of the residual clause that led to the sentencing court's enhancement of his sentence."); *but see United States v. Geozos*, 870 F.3d 890, 896 (9th Cir. 2017) (concluding that the movant may proceed with his claim under *Johnson II* if the sentencing court "may have" relied on the residual clause); *United States v. Winston*, 850 F.3d 677, 682 (4th Cir. 2017) ("[W]hen an inmate's sentence may have been predicated on application of the now-void residual clause and, therefore, may be an unlawful sentence under the holding in *Johnson II*, the inmate has shown that he 'relies on' a new rule of constitutional law.").**8** It is not enough for him

---

**7**In *Raines v. United States*, we interpreted *Potter* to "stand[] for the proposition that a 28 U.S.C. § 2255 movant seeking relief under *Johnson* must show 'evidence that the district court relied only on the residual clause in' making the ACCA determination under attack if (1) the movant is bringing a second or successive motion and (2) there is evidence that the movant was sentenced under a clause other than the residual clause, such as the sentencing judge's averment that the movant was indeed sentenced under another clause." 898 F.3d 680, 686 (6th Cir. 2018). We read *Raines*'s second condition to limit *Potter* to cases in which there is affirmative evidence that the sentencing court sentenced the movant under a clause other than the residual clause, the situation confronted in *Potter* itself. *See Potter*, 887 F.3d at 788 ("[T]he judge who reviewed his § 2255 motion is the same judge who sentenced him. It is difficult to think of a better source of information about what happened the first time. Judge Reeves saw no value to a second sentencing because he sentenced Potter under the enumerated-crimes clause."). Williams's case presents no such affirmative evidence. Here, however, because we conclude that Williams satisfies *Potter*'s presumably tougher standard, we need not decide what lesser showing a movant might be required to make where there is no affirmative evidence that he was sentenced under a different clause than the residual clause.

**8**To the extent that *Potter*'s phrase "relied only on" may appear to differ from the First and Eleventh Circuits' formulations, *see* 887 F.3d at 797, the Government argues that "[t]he 'relied only on' clarification emphasizes the need for the evidence [of reliance on the residual clause] to preponderate" over any evidence of reliance on a different clause. Appellee's Br. at 46. We believe that the Government is correct, in the sense that *Potter*'s test can be satisfied only when there is reason to believe that the residual clause was doing more than fifty percent of the sentencing's judge's analytical work—that is, only when the residual clause was the *decisive clause* in the sentencing judge's rationale.

To appreciate the meaning of this distinction, imagine two prisoners, each raising *Johnson II* claims. The first was sentenced by a judge who explicitly stated on the record: "I conclude that both the elements clause and the residual clause fully justify your sentence." The second was sentenced by a judge who explicitly stated on the record: "I conclude that the residual clause fully justifies your sentence, but it is possible that the elements clause might too." We understand the import of *Potter*'s "relie[s] only on" clause to be that the first prisoner could not raise a second or successive *Johnson II* claim, whereas the second could, because ultimately the *reliance* in that case would have been on the residual clause. This approach bears a passing resemblance to how we treat the analytically thorny habeas question of whether a state court based a judgment on federal law or on an "independent and adequate state ground," *see Coleman v. Thompson*, 501 U.S. 722, 732–35 (1991) (explaining that we may not consider the claim when a state court states "clearly and expressly" that state law is doing just as much or more work than federal

to show simply that "the sentencing court *may* have relied on the residual clause." *Potter*, 887 F.3d at 788.

The parties point to two sources of evidence for assessing whether a movant was sentenced for a relevant predicate conviction under the ACCA's residual clause: "1) the original sentencing proceedings; and 2) the relevant legal background at the time of the sentencing." Appellant's Br. at 40; *accord* Appellee's Br. at 49 ("Once again, *Potter* is instructive. It recognized that there are two primary sources of material that may be consulted: (i) the sentencing record, and (ii) case law that existed at the time of sentencing."). This list is underinclusive, even just drawing from *Potter*. In fact, while we agree that those two sources of evidence are well-established and helpful, *Potter* and cases from our sister circuits reveal at least five places that courts choose to look:

(1)    The sentencing record
(2)    The legal background
(3)    Informed decisionmakers
(4)    Nature of the predicate offense
(5)    Later legal developments (at least if highly predictable)

*See Potter*, 887 F.3d at 788; *Dimott*, 881 F.3d at 240–41; *United States v. Taylor*, 873 F.3d 476, 480–82 (5th Cir. 2017); *Beeman*, 871 F.3d at 1224 & nn.4–5; *United States v. Snyder*, 871 F.3d 1122, 1128–29 (10th Cir. 2017). We consider each in turn.

---

law in its analysis, *id.* at 733–34 (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)), whereas we presume the opposite "when the [state-court] decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion,'" *id.* at 735 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983))). Thus, in somewhat the same way that a habeas petitioner cannot obtain review when he can prove no more than that federal law supplemented the independently sufficient state-law rationale that the state court gave, a movant under *Potter* cannot show "that the district court relied only on the residual clause in sentencing" him when he can prove no more than that the residual clause supplemented an independently sufficient reliance on one of the other two clauses. *See Potter*, 887 F.3d at 787.

Of course, determining on which clause or clauses the sentencing judge relied will often hinge on the legal fiction of attempting to reconstruct what the sentencing judge must have thought based on other, objective evidence. *See, e.g.*, *Potter*, 887 F.3d at 788; *Dimott*, 881 F.3d at 240–41; *United States v. Taylor*, 873 F.3d 476, 480–82 (5th Cir. 2017); *Beeman*, 871 F.3d at 1224 & nn.4–5; *United States v. Snyder*, 871 F.3d 1122, 1128–29 (10th Cir. 2017). We discuss below, in light of *Potter* and persuasive authority from other circuits, how to make that objective assessment in this case.

### 1. Sentencing Record

Virtually all courts, including ours, look to a prisoner's sentencing record. *See Potter*, 887 F.3d at 788; *see also Dimott*, 881 F.3d at 240; *Beeman*, 871 F.3d at 1224 & n.4; *Snyder*, 871 F.3d at 1128. But this source is both the simplest and least helpful in cases like this one because, as all agree, the record itself offers no guidance. *See* Appellant's Br. at 41; Appellee's Br. at 5, 53. Williams cannot rely on the sentencing record to meet a heightened burden for invoking *Johnson II*.

### 2. Legal Background

Most courts also look, as we do, to the operative legal background. *See Potter*, 887 F.3d at 788; *see also Taylor*, 873 F.3d at 482; *Beeman*, 871 F.3d at 1224 & n.5; *Snyder*, 871 F.3d at 1129. In *Snyder*, for example, as the parties observe, the Tenth Circuit looked to "a 'snapshot' of what the controlling law was at the time of sentencing." 871 F.3d at 1129. Reasoning that the Supreme Court's rationale in *Taylor v. United States*, 495 U.S. 575, 599, 602 (1990), "would have [left] little dispute at the time of Snyder's sentencing that his two Wyoming burglary convictions involving occupied structures fell within the scope of the ACCA's enumerated crimes clause," the court rejected Snyder's claim under *Johnson II*. *Snyder*, 871 F.3d at 1229. *Potter*, similarly, pointed to cases from "the time" that had identified Georgia burglary as a qualifying ACCA predicate under the enumerated-crimes clause in rejecting Potter's petition. 887 F.3d at 788.

By contrast, in *Taylor*, the Fifth Circuit, while not adopting a particular standard burden for *Johnson II* petitioners, concluded that the petitioner there, Taylor, *could* rely on *Johnson II* because "there was precedent suggesting that Taylor's third predicate conviction could have applied only under the residual clause." 873 F.3d at 482 (citing *United States v. Gracia-Cantu*, 302 F.3d 308, 311–13 (5th Cir. 2002)). "Theoretically," the court explained, "the district court mistakenly could have been thinking of the elements clause when sentencing Taylor." *Id.* But it nevertheless refused to "hold a defendant responsible for what may or may not have crossed a judge's mind during sentencing." *Id.*

Williams's case is more like *Taylor* than it is like *Snyder* or *Potter*. Here, as Williams points out, Appellant's Br. at 43, there was only one case at the time of Williams's sentencing that could have informed his sentencing: *United States v. Calloway*, 189 F. App'x 486 (6th Cir. 2006). Although that case involved Ohio aggravated assault under Ohio Rev. Code § 2903.12 rather than § 2903.11 and the Guidelines rather than the ACCA, those are distinctions without differences: Ohio aggravated assault is functionally "identical" to Ohio felonious assault, *Anderson*, 695 F.3d at 402, and the relevant Guidelines provision was also functionally identical, *see* U.S.S.G. § 4B1.2(a) (2006); *United States v. Patterson*, 853 F.3d 298, 305 (6th Cir.), *cert. denied*, 138 S. Ct. 273 (2017). The language from our decision, meanwhile, is telling:

> Calloway argues that aggravated assault is not a predicate crime of violence as a defendant may cause physical harm without the use, attempted use or threatened use of physical force as required by U.S.S.G. Section 4B1.2(a)(1).
>
> Calloway's argument that the aggravated assault is not a crime of violence is without merit. There is no question that causing or attempting to cause physical harm presents a serious risk of physical injury to another under Section 4B1.2(a)(2) of the Sentencing Guidelines.

*Id.* at 491. In other words, Calloway had argued that his crime did not qualify under the elements clause, and we rejected his argument because his crime *did* qualify under the residual clause. *See id.* By expressly endorsing that one qualifying clause, we at the very least suggested strongly that the residual clause was a better justification than the elements clause. *Cf. NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017) (discussing the *expressio unius* canon). Therefore, both in light of the methods that other courts have adopted and the "presumption in the law that a district court knows and applies the law correctly," Appellee's Br. at 51 (quoting *United States v. Gale*, 468 F.3d 929, 941 (6th Cir. 2006)), we presume that when Judge Dowd sentenced Williams, *Calloway* pointed him to the residual clause.

Notably, the Government failed to offer a response to *Calloway* either in its briefing or at oral argument. Although that was enough to forfeit this issue, *see, e.g.*, *U.S. ex rel. Marlar v. BWXT Y-12, LLC*, 525 F.3d 439, 450 n.6 (6th Cir. 2008), the Government did belatedly address the issue in a letter it sent to the en banc court following oral argument, *see* Doc. 48 (Appellee's Letter of June 14, 2018, at 1). Even if we were not to deem the Government's response on this score forfeited, its arguments are unavailing. First, the Government argues that "the residual-

clause discussion [in *Calloway*] was not necessary to the decision because the offense was enumerated in the commentary." *Id.* But that does not change the guidance that *Calloway* would have offered Judge Dowd in sentencing Williams under the ACCA, because the offense was *not* enumerated for ACCA purposes. *See* 18 U.S.C. § 924(e). Second, the Government argues, "even if [*Calloway*] could be read to hold that the residual clause provides *a* basis for classifying this offense as a crime of violence, it does not hold that the residual clause is the *only* basis for that conclusion." Doc. 48 (Appellee's Letter of June 14, 2018, at 1). But that too is beside the point because Williams's challenge here is to prove that the residual clause was more likely than not the decisive clause on which Judge Dowd relied—not that it is *impossible* to imagine an alternate universe in which he relied on the elements clause instead. Thus, if *Calloway* was the only case around offering any guidance—and we find that it was—that suggests that it is more likely than not that Judge Dowd relied on the residual clause rather than the elements clause.

It is also true, moreover, that the categorical shortcomings of Ohio Rev. Code § 2903.11 should have been just as identifiable in 2006 as they are today. Much as the Tenth Circuit pointed out in *Snyder*, 871 F.3d at 1229, the dictates of the categorical approach had been clear since the Supreme Court's 1990 *Taylor* decision, *see* 495 U.S. at 588–90. And as the Supreme Court emphasized in its *Johnson I* ruling, the meaning of "force" in the context of the ACCA has also long been recognized:

> We think it clear that in the context of a statutory definition of "*violent* felony," the phrase "physical force" means *violent* force—that is, force capable of causing physical pain or injury to another person. *See Flores v. Ashcroft,* 350 F.3d 666, 672 (7th Cir. 2003) (Easterbrook, J.). Even by itself, the word "violent" in § 924(e)(2)(B) connotes a substantial degree of force. Webster's Second 2846 (defining "violent" as "[m]oving, acting, or characterized, by physical force, esp. by extreme and sudden or by unjust or improper force; furious; severe; vehement . . ."); 19 Oxford English Dictionary 656 (2d ed. 1989) ("[c]haracterized by the exertion of great physical force or strength"); Black's 1706 ("[o]f, relating to, or characterized by strong physical force"). When the adjective "violent" is attached to the noun "felony," its connotation of strong physical force is even clearer. *See id.* at 1188 (defining "violent felony" as "[a] crime characterized by extreme physical force, such as murder, forcible rape, and assault and battery with a dangerous weapon"); *see also United States v. Doe,* 960 F.2d 221, 225 (1st Cir. 1992) (Breyer, C.J.) ("[T]he term to be defined, 'violent felony,' . . . calls to mind a tradition of crimes that involve the possibility of more closely related, active violence").

*Johnson I*, 559 U.S. at 140–41 (non-Bluebook alterations in original). Because Williams's "sentencing proceeding occurred against the backdrop of the Supreme Court's decision in *Taylor*" and the longstanding legal and linguistic concepts discussed in *Johnson I*, *see Snyder*, 871 F.3d at 1129, and given that we presume "that a district court knows and applies the law correctly," Appellee's Br. at 51 (quoting *Gale*, 468 F.3d at 941), it is even more likely that Judge Dowd would have steered clear of the categorical red flags in Ohio Rev. Code § 2903.11's elements. *See, e.g.*, *Burris*, 912 F.3d at 397–98; *Perry*, 703 F.3d at 910; *Anderson*, 695 F.3d at 403–06 (6th Cir. 2012) (White, J., concurring). In sum, it seems clear that Judge Dowd more likely than not relied decisively on the residual clause in determining that Williams's conviction under Ohio Rev. Code § 2903.11 qualified as an ACCA predicate.

### 3. Informed Decisionmakers

A third source of evidence that we and other courts have looked to is whether the district judge who sentenced a petitioner is the same district judge who evaluated that petitioner's § 2255 motion. *See Potter*, 887 F.3d at 788 ("On top of that, the judge who reviewed his § 2255 motion is the same judge who sentenced him. It is difficult to think of a better source of information about what happened the first time around."); *see also Dimott*, 881 F.3d at 237 ("On collateral review, the district court judge in both cases (who had also served as the sentencing judge) found that Dimott and Collamore had earlier been sentenced pursuant to the ACCA's enumerated clause. . . . Although these findings were made during the collateral review process, and not expressly stated at the time of sentencing, we give them due weight because the habeas judge was describing his own decisions at sentencing."); *cf. Snyder*, 871 F.3d at 1128 ("In other words, the district court found, as a matter of historical fact, that it did not apply the ACCA's residual clause in sentencing Snyder under the ACCA.").

This source of evidence is not available here: while Williams was sentenced by Judge Dowd, *see, e.g.*, R. 18 (Sentencing Mem. Op. at 1) (Page ID #34), his § 2255 motion was considered below by Judge Oliver, R. 49 (Dist. Ct. Order at 1) (Page ID #397), and Judge Dowd has since passed away. While this source casts no affirmative light on the question at hand, it distinguishes Williams's petition from *Potter* and *Dimott*, in which the reviewing courts cited that source of evidence to buttress their rationales for denying relief.

### 4. **Nature of the Predicate Offense**

Some courts also look to the nature of the predicate offense to help piece together a district court's sentencing decision. For example, in *Potter*, we pointed to the fact that the crime at issue was Georgia burglary as additional evidence that the petitioner was unlikely to have been sentenced under the residual clause. *See* 887 F.3d at 788–89 (listing "the specification of 'burglary' in the enumerated-crimes clause of the Act," *id.* at 788, as one of the four factors on which this court was basing its conclusion). Likewise, in *Holt v. United States*, 843 F.3d 720 (7th Cir. 2016), a case cited by *Potter*, the Seventh Circuit considered a *Johnson II* movant who sought to contest the applicability of his prior conviction for Illinois burglary. *Id.* at 721. In rejecting Holt's petition, however, the court specifically distinguished Holt from a petitioner like Williams. After reciting the clauses of the ACCA, the court explained:

> [T]he residual clause . . . contains the only language that *Johnson* held unconstitutionally vague. The possibility that after *Johnson* defendants may have a stronger incentive to contest the classification of convictions under the elements clause—in the hope of moving them to the residual clause and thus eliminating them from the set of violent felonies—has nothing to do with Holt's situation. His burglary conviction was classified as a violent felony under the burglary clause. Nothing in *Johnson*, *Welch*, or *Stanley* [an earlier Seventh Circuit case] affects the proper treatment of burglary convictions. So Holt's second collateral attack cannot rest on *Johnson*.

*Id.* at 723.

This language suggests that courts might reasonably treat a conviction for an ostensibly enumerated crime as allowing somewhat greater certainty about a sentencing judge's decisionmaking than would a crime at the fault line between the elements clause and the residual clause. *See id.* Regardless, Williams was not convicted of an ostensibly enumerated crime, and in any event he meets his burden based on the legal background alone. Nevertheless, we note that this factor also distinguishes Williams's case from *Potter*, 887 F.3d at 787 (Georgia burglary), as well as from *Dimott*, *Snyder*, and *Holt*, which all involved state burglary charges, *see Dimott*, 881 F.3d at 234 (Maine burglary); *Snyder*, 871 F.3d at 1125 (Wyoming burglary); *Holt*, 843 F.3d at 720 (Illinois burglary).

**5. Later Legal Developments**

Finally, while some of the courts that look to "a 'snapshot' of what the controlling law was at the time of sentencing" purposefully exclude from that analysis "post-sentencing decisions that may have clarified or corrected pre-sentencing decisions," *Snyder*, 871 F.3d at 1129, others have also consulted after-the-fact case law. In *Dimott*, for example, the First Circuit expressly relied on one of its own recent opinions on the ground that the recent opinion's "holding [was] a 'straightforward' application of the 1990 Supreme Court decision in *Taylor v. United States*, 495 U.S. 575 (1990)." *Dimott*, 881 F.3d at 241 (quoting *United States v. Duquette*, 778 F.3d 314, 317 (1st Cir. 2015)). Likewise, though less pivotally, we in *Potter* observed that "[c]ases decided after [Potter's] sentencing" confirmed that Georgia burglary qualified under the enumerated-crimes clause, though it offered this observation only after noting that cases that preceded Potter's sentencing had said so, too. 887 F.3d at 788. Here, however, while we ruled in *Anderson* that Ohio felonious assault qualified under the elements clause in 2012, 695 F.3d at 400, 402, we then ruled (the very next year) in *Perry*, without mentioning *Anderson*, that the (functionally identical) crime of Ohio aggravated assault qualified only under the residual clause, *see Perry*, 703 F.3d at 910. Thus, as the Government concedes, "the after-announced decisions do not support a presumption one way or the other that the sentencing court relied on the elements or the residual clause in this case." Appellee's Br. at 54.

\* \* \*

In short, surveying the various sources of evidence that we can draw from, the balance tips in Williams's favor. Williams's sentencing record and later legal developments provide no guidance one way or the other, and there is no informed decisionmaker on whose recollection we can draw. But the one case that informs the legal background at the time of Williams's sentencing points appreciably toward the residual clause, and the nature of the predicate offense at the very least does not vitiate that conclusion. Williams has therefore met his burden in proving that Judge Dowd more likely than not relied on the residual clause in deeming his conviction under Ohio Rev. Code § 2903.11(A) an ACCA predicate. Williams is accordingly entitled under § 2255(h)(2) to raise a second or successive motion.

**D. Whether Williams's ACCA Sentence Can Stand**

Williams's conviction under Ohio Rev. Code § 2903.11(A) can no longer qualify as an ACCA predicate under the residual clause. *Johnson II*, 135 S. Ct. at 2557. The only question left is whether it can nevertheless qualify as an ACCA predicate under the elements clause. *See* 18 U.S.C. § 924(e)(2)(B)(i); *see also, e.g.*, *Van Cannon v. United States*, 890 F.3d 656, 661 (7th Cir. 2018) ("To win § 2255 relief, Van Cannon had to establish a *Johnson* error *and* that the error was *harmful*. The government confessed the *Johnson* error . . . . The only remaining dispute concerned the question of prejudice."). For the reasons provided by our en banc court in *Burris*, Ohio Rev. Code § 2903.11(A)(1) is a categorical mismatch with the functionally identical elements clauses of both the ACCA and the Guidelines. *Burris*, 912 F.3d at 399.

Williams was convicted of violating Ohio Rev. Code § 2903.11(A), and it is undisputed at this stage that none of the *Shepard* documents suggests that he was in fact convicted under a particular prong. *See* R. 39-3 (Indictment and Journal Entry) (Page ID #227–28); R. 48-1 (Sentencing Tr. at 7–8, 11) (Page ID #389–90, 393); Appellant's Br. at 16. That conviction therefore cannot validly serve as an ACCA predicate. Because that leaves him with only two qualifying ACCA predicates, his sentence as an armed career criminal no longer comports with federal law. *See* 18 U.S.C. § 924(e)(1); PSR at 1, 7–8; R. 1 (Indictment) (Page ID #3–4).

### III. CONCLUSION

Because Williams has shown that it is more likely than not that his sentencing judge decisively relied on the residual clause in deeming his Ohio felonious assault conviction an ACCA predicate, he is entitled to raise a second or successive motion under § 2255 in light of *Johnson II*. Because neither the residual clause nor the elements clause can now justify deeming that conviction an ACCA predicate, Williams's federal prison sentence as an armed career criminal is no longer justified under federal law. We accordingly **VACATE** Williams's sentence and **REMAND** for resentencing.

———————————

**CONCURRENCE**

———————————

MERRITT, Circuit Judge, concurring.  I concur in Judge Moore's comprehensive and complex opinion in this case written after and in light of the court's *en banc* opinion in *United States v. Burris*, 912 F.3d 386 (6th Cir. 2019).  But at the same time I continue to agree with my dissenting opinion when our panel heard the case initially in 2017.  *Williams v. United States*, 875 F.3d 803, 809 (6th Cir. 2017).  In that dissenting opinion, I concluded that *United States v. Anderson*, 695 F.3d 390 (6th Cir. 2012) (now apparently rejected in *Burris*), was no longer applicable in light of the Supreme Court's opinion in *Mathis v. United States*, 136 S. Ct. 2243 (2016).

Perhaps the Armed Career Criminal Act will someday be repealed.

In the last paragraph of my dissenting opinion two years ago, I pointed out what the two justices thought about this law.  "Justice Breyer said, the Armed Career Criminal Act creates a 'time-consuming legal tangle.'  *Mathis*, 136 S. Ct. at 2264 (Breyer, J., dissenting).  Justice Alito agreed and referred to the analytical process simply as a 'mess.'  *Id*. at 2269 (Alito, J., dissenting)."